IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISON

| | |
|---|---|
| JOSE DELCID BONILLA, JUAN CAMACHO, MARIA CASTILLO, CARLOS FUENTES PÁRAMO, ABEL HERNANDEZ, SALVADOR JAUREQUI, JULIO LOERA, ARTURO MUÑOZ MARTINEZ, ALBERTO SANCHEZ CHAVEZ, ABRAHAM SANTANA, JESUS LOPEZ, GONZALO RAMIREZ VASQUEZ, CARLOS REYNA ESPARRAGOZA, JOSE RODRIGUEZ, and EPIFANIO URIBE ORTIZ, | No. 3:17-CV-201 |
| | JURY TRIAL DEMANDED |
| **Plaintiffs,** | |
| **v.** | |
| **DALLAS COUNTY, TEXAS,** | |
| **Defendant.** | |

## COMPLAINT

Freedom from pretrial detention is a fundamental right protected by the United States Constitution. "This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). "The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Dallas County held Plaintiffs in Dallas County jail for months pending trial without allowing immediate release on bond. Dallas County also overdetained Plaintiffs without probable cause. Plaintiffs seek damages under 42 U.S.C. § 1983.

1

<b><span style="font-variant: small-caps;">Parties</span></b>

1.      Plaintiffs were detained by Dallas County. U.S. Immigration and Customs Enforcement ("ICE") issued detainers requesting that Dallas County facilitate ICE's arrest of each Plaintiff, generally by (i) detaining each Plaintiff for up to 48 hours after the time that each Plaintiff otherwise would have been released, or (ii) notifying ICE when Dallas County intended to release each Plaintiff. As a result, an "immigration hold" appears in each Plaintiff's file. At the time this lawsuit was filed, no Plaintiff remained in Dallas County custody.

2.      Dallas County is located in North Texas. Process for Dallas County may be effected on Clay Jenkins, County Judge, who is located at 411 Elm St., Dallas, Texas, 75202. Tex. Civ. Prac. & Rem. Code § 17.024(a). Lupe Valdez is the Sheriff of Dallas County and is the highest ranking law-enforcement officer in Dallas County. She is responsible for the Dallas County Sheriff's Department, Dallas County jails, and Dallas County inmates.

<b><span style="font-variant: small-caps;">Jurisdiction and Venue</span></b>

3.      This is a civil-rights case arising under the United States Code, title 42. The Court thus has subject-matter jurisdiction over this lawsuit. 28 U.S.C. § 1331. This lawsuit is related to the *Mercado v. Dallas County* and *Garza v. Dallas County* lawsuits currently pending in this court. No. 15-CV

4.      Dallas County is located in this District. Dallas County regularly conducts business in Texas and this district.

5.      Dallas County's acts in Texas form the basis of this lawsuit. The Court thus has personal jurisdiction over Dallas County.

2

6.      Venue is proper under 28 U.S.C. § 1391 because many of the complained-of acts in this case occurred in Dallas County, Texas, and because Dallas County is located in this District.

**LOCAL LAW-ENFORCEMENT AGENCIES: THE NEW FRONT LINE IN ENFORCING IMMIGRATION LAWS**

7.      ICE is a large, sophisticated federal agency charged with enforcing our nation's immigration laws. ICE has a $6 billion budget and more than 20,000 employees. Ex. C (Morgan Smith & Terri Langford, *Texas Sheriffs, Jails on Immigration Front Line*, Texas Tribune, Feb. 16, 2016) at C1. Despite its size and resources, ICE has "no proactive way [to use] watch lists, data mining or the like . . . to systematically search for dangerous undocumented immigrants, including those who have returned to the United States after being deported for committing crimes." *Id.* "Instead, if an immigrant criminal is caught and thrown out of the country, the process most likely begins when a local police officer or sheriff's deputy pulls them over for a traffic stop or arrests them as part of a criminal investigation." *Id.*

8.      For many decades, local law-enforcement officers have fingerprinted detainees during booking. Over the last few years, however, technology has changed in an important way—local law-enforcement agencies now route detainees' fingerprints through federal databases at the FBI and Homeland Security during booking. Ex. D (Julia Preston, *Despite Opposition, Immigration Agency to Expand Fingerprint Program*, The N.Y. Times, May 11, 2012) at D2; Ex. E (Dianne Solís, *Police Use of Federal Databases to ID Illegal Immigrants after Arrests Raises Profiling Concerns*, The Dallas Morning News, July 25, 2010), at E1-3. In particular, law enforcement can now routinely check fingerprints taken in local arrests against (i) the FBI's Integrated Automated Fingerprint Identification System ("IAFIS") of the FBI's Criminal Justice Information Services Division, and (ii) the Automated Biometric Identification System

3

("IDENT") of the Department of Homeland Security's US-VISIT Program. *See* Ex. F (*Secure Communities Fact Sheet*, U.S. Dep't of Homeland Sec., Sept. 1, 2009) at F1. After submission, "ICE evaluates each case to determine the individual's immigration status and communicate their findings to law enforcement within a few hours." *Id.* A presentation created by the Texas Department of Public Safety shows the data flow from local arrests to federal databases (including IAFIS and IDENT) in the graphic below.



Ex. G at G5. According to one commentator, the submission of fingerprints for ICE's use "turn[s] local jails into tiny immigration outposts." Ex. H (Lomi Kriel, *Immigration Screening Still Used in Texas as Other Agencies Withdraw,* Houston Chronicle, Oct. 16, 2014), at H1.

9.      When fingerprints submitted by a local agency match an IDENT record, the information about the match (called an "IDR") is forwarded to the FBI. Ex. I (*Secure Communities: Removing Criminal Aliens from Communities through Biometric Information Sharing*, U.S. Department of Homeland Security) at I2; Ex. G at G5. The FBI then populates and forwards an Immigration Agency Query ("IAQ") to the ICE Law Enforcement Support Center. Ex. I at I2; Ex. G at G5. The Support Center responds to the Query (the response is called an "IAR"), which is then forwarded to other ICE offices. Ex. I at I2; Ex. G at G5. ICE ultimately uses the information to determine whether ICE will seek to remove the detainee. *See* Ex. J (*Secure Communities Standard Operating Procedures*, Immigrations and Customs Enforcement) at J8.

10.     If ICE believes it can meet its burden to deport a detainee, ICE can arrest and take possession of that detainee, hold the detainee pre-removal, and then remove the detainee. But if ICE were to deport the detainee immediately, the detainee would not stand trial for the original, local criminal offense. Consequently, ICE generally waits until after the local criminal offense is resolved to arrest the detainee and commence the removal process. *See* Ex. A (Torres Cabrera detainer) ("DHS discourages dismissing criminal charges based on the existence of a detainer.") at A1; Ex. J (ICE Secure Communities Operating Procedures) at J8 ("Normally, ICE will not remove an alien until pending criminal charges are adjudicated.").

11.     To facilitate ICE's arrest of detainees after local criminal offenses are resolved, ICE requests that local law-enforcement agencies (i) notify ICE when they intend to release targeted detainees and/or (ii) hold targeted detainees after those detainees otherwise would be released, to allow ICE time to show up and take custody of the detainees. ICE uses forms called "detainers" to formally request assistance. *See, e.g.*, Exs. A-B (detainers). The Code of

Federal Regulations describes detainers as "request[s]" that "advise" local law-enforcement agencies that ICE seeks custody of an alien presently in the custody of that agency:

> (a) Detainers in general. Detainers are issued pursuant to sections 236 and 287 of the Act and this chapter 1. Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

8 C.F.R. § 287.7(a). Because detainers are "requests," local law-enforcement agencies need not respond or comply with detainers. *See Galarza v. Szalczyk*, 745 F.3d 634, 642 (3d Cir. 2014); *Mercado v. Dall. Cnty., Tex.*, No. 15-3481, 2017 WL 169102, at *8 (N.D. Tex. Jan. 17, 2017).[1] In 2013, ICE stated that detainers served three functions: (i) to notify a local law-enforcement agency that ICE intends to assume custody of an alien in the local agency's custody once the alien is no longer subject to the local agency's detention; (ii) to request information from a local agency about an alien's impending release so that ICE may assume custody before the alien is released from the local agency's custody; and (iii) "to request that the [local agency] maintain custody of an alien who would otherwise be released for a period not to exceed 48 hours (excluding Saturdays, Sundays, and holidays) to provide ICE time to assume custody." Ex. K (*ICE Detainers: Frequently Asked Questions*, visited Mar. 20, 2013) at K1.

12.    In February 2016, the Texas Tribune created a flowchart showing how detainers interact with the Texas criminal-justice system, shown below:

---

[1] *See also* Ex. L (Letter from ICE Acting Director Daniel H. Ragsdale to Rep. Mike Thompson dated February 25, 2014) at L1 ("While immigration detainers are an important part of ICE's effort to remove criminal aliens who are in federal, state, or local custody, they are not mandatory as a matter of law.").



How ICE Interacts with the Texas Criminal Justice System

The flowchart below details the criminal justice process on both the state and federal sides.

**STATE — ARREST**

State or local law enforcement officials arrest a criminal suspect.

**STATE — BOOKING**

Charges are filed. The suspect gives identifying information — name, date of birth, self-reported country of birth — to local law enforcement officers, who are not required to ask about citizenship status.

Fingerprints are taken and sent to the Texas Department of Public Safety, which then sends them to the FBI.

**ICE — IDENTITY CHECK**

The FBI sends fingerprint data to the U.S. Department of Homeland Security.

If an arrested suspect's prints match federal immigration records, ICE can issue a request for either a "detainer" to hold that person up to 48 hours in the local jail for pickup or a "notification" asking the jail to notify ICE when the defendant is set to be released.

POSSIBLE PATH TO ICE DETENTION

**STATE — CUSTODY HEARING**

The jail either releases the defendant on bond if the defendant makes bail, or it holds the defendant for the rest of the criminal process.

If a defendant with an ICE detainer makes bail, ICE has the discretion to pick that person up before he or she is released.

**STATE — RESOLUTION OF CHARGES**

If a prosecutor pursues charges, the defendant pleads guilty or goes to trial.

CONVICTED | FOUND NOT GUILTY

**SENTENCE SERVED IN JAIL OR PRISON**

**RELEASED ON PROBATION**

If ICE issues a detainer at any point after a defendant is released with a sentence of probation, federal officials can take the defendant into custody.

**RELEASED**

**STATE — DETAINER OR NOTIFICATION — ICE**

Requests for detainers and notifications usually happen during the booking process following the initial identity check, but ICE can issue them at any time while an individual faces local criminal charges.

Whether to comply with ICE requests is up to local officials. They can notify federal authorities before an inmate is released, a point when ICE can decide to take further action. Or, in the case of a detainer, they can hold inmates set to be released for up to 48 additional hours until ICE arrives to pick them up.



McCullough and Emily Albracht

13.    On December 21, 2012, the Director of ICE issued a memorandum describing Form I-247, the detainer form used by the Dallas ICE Office until at least May 2015. *See* Ex. A at A1 (I-247 form issued to Dallas County in May 2015). "The revised detainer form . . . will . . . require the issuing officer or agent to identify [the grounds for removal] that apply so that the receiving agency and alien will know the specific basis for the detainer." Ex. M (Morton memorandum dated December 21, 2012) at M3. The memorandum states that ICE should issue a detainer only where (i) ICE has reason to believe that the alien is subject to removal, and (ii) one or more of the following conditions apply:

- The individual has a prior felony conviction;
- The individual has three prior misdemeanor convictions;

9

- The individual has a prior misdemeanor conviction or pending charge that involves violence, sexual abuse, driving under the influence of alcohol, unlawful flight from the scene of an accident, unlawful possession of a firearm, trafficking of a controlled substance, or other significant threats to public safety;

- The individual has been convicted of illegal entry;

- The individual has illegally re-entered the country after a previous removal or return;

- The individual has an outstanding order of removal;

- The individual has been found by an immigration officer or an immigration judge to have knowingly committed immigration fraud; or

- The individual otherwise poses a significant risk to national security, border security, or public safety.

*Id.* at M2. As stated in the memorandum (*id.* at M3), the I-247 detainer form reflects these conditions, and includes checkboxes for each of the above conditions, as shown in the excerpt below:

THE U.S. DEPARTMENT OF HOMELAND SECURITY (DHS) HAS TAKEN THE FOLLOWING ACTION RELATED TO THE PERSON IDENTIFIED ABOVE, CURRENTLY IN YOUR CUSTODY:

☒ Determined that there is reason to believe the individual is an alien subject to removal from the United States. The individual (*check all that apply*):

☒ has a prior a felony conviction or has been charged with a felony offense;

☐ has three or more prior misdemeanor convictions;

☐ has a prior misdemeanor conviction or has been charged with a misdemeanor for an offense that involves violence, threats, or assaults; sexual abuse or exploitation; driving under the influence of alcohol or a controlled substance; unlawful flight from the scene of an accident; the unlawful possession or use of a firearm or other deadly weapon, the distribution or trafficking of a controlled substance; or other significant threat to public safety;

☐ has been convicted of illegal entry pursuant to 8 U.S.C. § 1325;

☐ has illegally re-entered the country after a previous removal or return;

☐ has been found by an immigration officer or an immigration judge to have knowingly committed immigration fraud;

☐ otherwise poses a significant risk to national security, border security, or public safety; and/or

☐ other (specify): _____

Ex. A at A1.

14.     The "conditions" identified in the Morton memorandum are not criminal immigration offenses.[2] It is not a crime to "be subject to removal," to have prior felony or misdemeanor convictions, or to be charged with a crime. It is often a crime to for an alien to re-enter

---

[2] Criminal immigration offenses are found at 8 U.S.C. §§ 1324-1328 and include: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain

the United States after the alien has been deported or removed. But the checkbox on the I-247 form is not limited to this situation—it lists re-entry after a previous "removal **or return**," and reentry after "return" is not listed at 8 U.S.C. § 1326 (listing reentry after being "denied admission, excluded, deported, or removed" as a crime).

15. On June 12, 2015, ICE released two new detainer forms: the I-247N and the I-247D. Ex. HH (*Why 'PEP' Doesn't Fix S-Comm's Failings*, National Immigration Law Center) at HH1. ICE explained that the I-247N Form was a "Request for Voluntary Notification of Release of Suspected Priority Alien," while the I-247D Form was a "Request for Voluntary Action":

> Under PEP, DHS will no longer use the Form I-247 (Immigration Detainer – Notice of Action) and will instead use two new forms:
>
> **Form I-247N, Request for Voluntary Notification of Release of Suspected Priority Alien.**
> The Form I-247N requests the receiving local law enforcement agency (LEA) notify ICE of the pending release from custody of a suspected priority removable individual at least 48 hours prior to release, if possible. The Form I-247N does not request or authorize the LEA to hold an individual beyond the point at which he or she would otherwise be released. Additionally, on the Form I-247N, ICE must identify the enforcement priority under which the individual falls.
>
> **Form I-247D, Immigration Detainer - Request for Voluntary Action.**
> The Form I-247D requests the receiving LEA maintain custody of the priority individual for a period not to exceed 48 hours beyond the time when he or she would have otherwise been released from custody. On this form, ICE must identify the enforcement priority under which the individual falls, as well as the basis for its determination of probable cause. The LEA must also serve a copy of the request on the individual in order for it to take effect.

Ex. GG (ICE brochure on Priority Enforcement Program) at GG1.

---

aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328).

16.     ICE uses the new detainer forms. *See* Ex. DD at DD8 (I-247N for F. Lara Martinez served on Dallas County in September 2015). The I-247N forms explicitly "does not request or authorize that [the local law-enforcement agency] detain the subject beyond the time he or she is currently scheduled for release from [agency] custody," as shown below:



*Id*. Like the I-247 form, the I-247N form provides checkboxes for certain conditions that do not identify criminal probable cause:



*Id.* Prior convictions, alone, do not provide Dallas County with probable cause to believe that a detainee is committing or has committed a new criminal offense.

17.     Unlike the I-247N form, the I-247D form requests that local law enforcement detain for up to 48 hours:

**IT IS THEREFORE REQUESTED THAT YOU:**
- Serve a copy of this form on the subject and maintain custody of him/her for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. **This request takes effect only if you serve a copy of this form on the subject, and it does not request or authorize that you hold the subject beyond 48 hours. This request arises from DHS authorities and should not impact decisions about the subject's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters.**

Ex. II (Sample form I-247D) at II1. Form I-247D provides checkboxes to show that "probable cause exists **that the subject is a removable alien**" (emphasis added), but does not show that probable cause exists that the subject is committing or has committed a new criminal violation:

**1. DHS HAS DETERMINED THAT** *(mark at least one option in subsection A and one option in subsection B, or skip to section 2)*:

**A. THE SUBJECT IS AN IMMIGRATION ENFORCEMENT PRIORITY BECAUSE HE/SHE:**

☐ has engaged in or is suspected of terrorism or espionage, or otherwise poses a danger to national security;

☐ has been convicted of an offense of which an element was active participation in a criminal street gang, as defined in 18 U.S.C. § 521(a), or is at least 16 years old and intentionally participated in an organized criminal gang to further its illegal activities;

☐ has been convicted of an offense classified as a felony, other than a state or local offense for which an essential element was the alien's immigration status;

☐ has been convicted of an aggravated felony, as defined under 8 U.S.C. § 1101(a)(43) at the time of conviction;

☐ has been convicted of a "significant misdemeanor," as defined under DHS policy; and/or

☐ has been convicted of 3 or more misdemeanors, not including minor traffic offenses and state or local offenses for which immigration status was an essential element, provided the offenses arise out of 3 separate incidents.

**B. PROBABLE CAUSE EXISTS THAT THE SUBJECT IS A REMOVABLE ALIEN.** THIS DETERMINATION IS BASED ON:

☐ a final order of removal against the subject;

☐ the pendency of ongoing removal proceedings against the subject;

☐ biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or

☐ statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

*Id.*

18.     Neither the I-247D nor the I-247N provide local law enforcement with probable cause of an independent criminal violation that might allow Dallas County to detain under the Fourth Amendment. The I-247D explicitly only states that ICE has probable cause of a **civil** violation—removability. Ex. II at II1. The I-247N only states that DHS "suspects" that the subject is removable. Ex. DD at DD8. The checkboxes in both forms do not provide Dallas County with sufficient facts to conclude that any detainee is committing or was committing a crime. No detainer issued using Form I-247D or I-247N provides probable cause of an independent criminal violation that might allow Dallas County to detain under the Fourth Amendment.

19.     Further, according to the Transactional Records Access Clearinghouse at Syracuse University, most detainers are lodged against individuals who have never been convicted of a crime. During April 2015, only 19% of detainers related to those with a felony conviction, and only 32% of detainers related to those with any convictions. Ex. N (*Further Decrease in*

*ICE Detainer Use: Still not Targeting Serious Criminals*, Transactional Records Access Clearing-house, Aug. 28, 2015) at N2. Two-thirds of the detainers issued by ICE targeted individuals without any prior criminal convictions. *Id.*

20.    ICE regularly issues detainers. In August 2011, ICE issued over 27,000 detain-ers. Ex. C at C2. More recently, as of October 2015, ICE issued over 7,000 detainers. Ex. N at N2. For the fiscal year ending September 30, 2015, approximately 59% of the individuals removed from the United States were originally arrested and held in local jails and prisons. *Id.*

21.    ICE regularly issues detainers in Texas. Texas jails detained, on average, around 3,700 undocumented immigrants each month in 2015. *Id.* To "highlight the burden . . . placed on county budgets" caused by complying with detainers, the Texas Legislature passed S.B. 1698,[3] which "requires jails to track the number of inmates held on federal detainers along with the number of days those prisoners are housed and how much counties are paying to hold them." Ex. O (Sarah Thomas, *Officials Grapple with Costs of Jailing Undocumented Immi-grants*, Longview News-Journal, Oct. 16, 2013) at O1. From those records, the Texas Tribune concluded that Texas county jails have spent over $218.9 million housing over 180,000 un-documented immigrants with federal detainers between October 2011 and June 2014. Ex P. (Dan Hill, *Interactive: The Cost of Jailing Undocumented Immigrants*, Texas Tribune, July 21, 2014) at P1.

**ICE REGULARLY ISSUES DETAINERS TO DALLAS COUNTY**

22.    Dallas County receives a large number of ICE detainers. In 2015, eight jails re-ceived more than 1,000 detainers, including Dallas County. Ex. C at C2. In fiscal 2014, ICE placed about 1,930 holds in Dallas County (about 160 a month). Ex. Q (Dianne Solís, *Dallas*

---

[3] Portions of that bill are codified at Tex. Gov't Code § 511.0101.

*County Sheriff Eases Immigration Holds on Minor Offenses*, The Dallas Morning News, Oct. 11, 2015) at Q2. In fiscal 2015, ICE placed about 2,048 holds in Dallas County (about 170 a month). *Id.* "Dallas County spent more than $22 million housing more than 12,000 undocumented immigrants." Ex. O at O2; *see also* Ex P at P2 (Dallas County spent over $22 million between October 2011 and June 2014). Judge Michael Snipes, who served as a criminal district-court judge in Dallas County until December 31, 2014, confirms that ICE would serve detainers on Dallas County. Ex. JJ ¶ 3. Judge Snipes' statements cited throughout the Amended Complaint are informed by his personal experience with and personal knowledge of the Dallas County criminal-justice system until December 31, 2014. *Id.* ¶ 2.

23.     Detainers are generally not publicly available. Plaintiffs attach three examples of detainers directed to Dallas County. First, the Immigration Detainer for Andres Torres Cabrera[4] is attached as Exhibit A. The Torres Cabrera Immigration Detainer states that "there is reason to believe [Mr. Torres Cabrera] is subject to removal from the United States." Ex. A at A1. But under federal law, being "subject to removal" is not a crime. The Immigration Detainer states that Mr. Torres Cabrera has a prior felony, but does not state (in form or substance) facts showing probable cause that would support arrest under the Fourth Amendment, such as probable cause to believe that Mr. Torres Cabrera has committed a different criminal offense or is committing a different criminal offense. *See id.* The Immigration Detainer requests that Dallas County maintain custody over Mr. Torres Cabrera:

> IT IS REQUESTED THAT YOU: Maintain custody of the subject for a period **NOT TO EXCEED 48 HOURS** excluding Saturdays, Sundays, and holidays, beyond the time when the subject would have otherwise been released from your custody to allow [the Department of Homeland Security] to take custody of the subject.

---

[4] Mr. Torres Cabrera is a plaintiff in the co-pending *Mercado* matter.

Ex. A. The Immigration Detainer requests that Dallas County provide a copy of the Detainer to the subject, *id.*, but Mr. Torres Cabrera did not receive a copy of the Detainer.

24.     Second, the Immigration Detainer for Jesus Nava Arriola is attached as Exhibit B. Mr. Nava Arriola is not a plaintiff. The Nava Arriola Immigration Detainer states that "there is reason to believe [Mr. Nava Arriola] is subject to removal from the United States." Ex. B at B1. Again, under federal law, being "subject to removal" is not a crime. The Immigration Detainer states that Mr. Nava Arriola has a prior felony, but does not state (in form or substance) facts showing probable cause that would support arrest under the Fourth Amendment, such as probable cause to believe that Mr. Nava Arriola has committed a different criminal offense or is committing a different criminal offense. *See id.* The Immigration Detainer requests that Dallas County maintain custody over Mr. Nava Arriola:

> IT IS REQUESTED THAT YOU: Maintain custody of the subject for a period **NOT TO EXCEED 48 HOURS** excluding Saturdays, Sundays, and holidays, beyond the time when the subject would have otherwise been released from your custody to allow [the Department of Homeland Security] to take custody of the subject.

*Id.* The Immigration Detainer requests that Dallas County provide a copy of the Detainer to the subject, *id.*, but Mr. Nava Arriola did not receive a copy of the Detainer.

25.     Third, the Immigration Detainer for Francisco Lara Martinez is attached Exhibit DD, at DD8. Mr. Lara Martinez is not a plaintiff. The Lara Martinez Detainer has the title "Request for Voluntary Notification of Release of Suspected Priority Alien." Ex. DD at DD8. The Lara Martinez Detainer states that "DHS suspects that [Mr. Lara Martinez] is a removable alien and that the subject is an immigration enforcement priority because [he] . . . has been convicted of a 'significant misdemeanor,' as defined by DHS policy." *Id.* Under federal law, being "suspected" of being a removable alien is not a crime. The Detainer states that Mr. Lara

Martinez has a prior misdemeanor, but does not state (in form or substance) facts showing probable cause that would support arrest under the Fourth Amendment, that is, probable cause to believe that Mr. Lara Martinez has committed a different criminal offense or is committing a different criminal offense. *See id.*

26. The Plaintiffs do not have copies of their detainers. Dallas County claims that "only Sheriff Valdez" might have access and be able to provide the detainers, as shown in the below email exchange between Anthony Garza (counsel for Plaintiffs) and Peter Harlan (counsel for Dallas County):

---

**From:** Anthony Garza [agarza@ccrglaw.com]
**Sent:** Thursday, June 09, 2016 5:20 PM
**To:** Peter Harlan
**Subject:** Mercado: detainers for plaintiffs

Mr. Harlan-

Good afternoon. Discovery is stayed in the Mercado matter. We nevertheless request that Dallas County voluntarily provide the immigration detainers in its possession for Plaintiffs. We intend to attach them to our amended complaint.

Feel free to call me if you have any questions.

Anthony M. Garza
Charhon Callahan Robson & Garza

---

Anthony:

Unfortunately I must respectfully decline your request for voluntary discovery at this time. Dallas County administration does not have custody of any of the documents relevant to the Plaintiffs claims in this suit. Assuming the documents you request exist and can be located, only Sheriff Valdez would have access and be able to produce them. Any voluntary production of these documents by her at this juncture of the case might be construed as a waiver of her qualified immunity from discovery and suit which she is understandably not willing to do at this time.

Of course, if you would like to discuss the matter further please do not hesitate to contact me at your convenience.

Kind regards,

Peter L. Harlan
Assistant District Attorney
Federal Litigation Section

---

Ex. R at R1.

27.     In light of the three detainers attached to the Complaint, each of which do not show probable cause of a criminal offense, Plaintiffs claim as fact that no detainer relating to any Plaintiff states facts sufficient to show that any Plaintiff had committed a different criminal offense or was committing a different criminal offense.

### DALLAS COUNTY OVERDETAINED FOR TRANSFER TO ICE

28.     Dallas County generally honors ICE's requests to detain. Ex. T (*Dallas Sheriff Responds to Texas Governor: All ICE Detainers Honored this Year*, The Dallas Morning News Trailblazers Blog, Oct. 26, 2015) at T1 (stating that Sheriff Valdez had not rejected any detainers in 2015: "we have accepted 1469 detainers from ICE and declined zero."). Dallas County is not alone—the Houston Chronicle reported in October 2014 that "every county jail [in Texas] continues to comply with ICE detainer requests by holding suspects whose fingerprints match the immigration database." Ex. H at H1. Between January 2014 and September 2015, Texas law enforcement agencies refused only 146 detainers.[5] Ex. U (Andy East, *U.S. Citizen Jailed in Immigration Status Mistake*, Texas Tribune, Feb. 27, 2016) at U2. A review of ICE records obtained by the Texas Tribune showed that Dallas County had only twice declined to enforce a detainer. Ex. V (Morgan Smith and Jay Root, *Jails Refused to Hold Thousands of Immigrants for Feds*, Texas Tribune, Jan. 15, 2016) at V3.

29.     Upon receipt of an ICE detainer, Dallas County places an "immigration hold" in that detainee's file. As an example, the following appears in the file for Plaintiff Jose Delcid Bonilla:

---

[5] An earlier article in the Texas Tribune suggested that the number of refused detainers was artificially inflated because it included "cases where inmates were transferred to other jurisdictions in response to outstanding warrants or had to be released after federal authorities failed to pick them up within 48 hours." Ex. V (Morgan Smith & Jay Root, *Jails Refused to Hold Thousands of Immigrants Sought by Feds*, Texas Tribune, Jan. 15, 2016) at V2.

|  |  |
|---|---|
| Hold | Agency ID |
| Bond Amount | 0.00 |
| Charge | ILLEGAL ALIEN |
| Warrant Number | 354418483 |
| Magistrate | |
| Remark | HF INS |

"Illegal Alien" is often used by Dallas County as shorthand for an immigration hold. The immigration hold in each Plaintiff's file is evidence that ICE sent a detainer to Dallas County for each Plaintiff, often requesting that Dallas County detain each Plaintiff for up to 48 hours after the time that each Plaintiff otherwise would have been released to facilitate ICE's arrest of that Plaintiff, like the example requests attached for Mr. Torres Cabrera and Mr. Nava Arriola. Exs. A-B. Judge Snipes confirmed that "Dallas County places 'immigration holds' on detainees that are subject to an ICE detainer." Ex. JJ ¶ 4.

30.     Dallas County detains individuals after they would otherwise be released to allow ICE an opportunity to take custody of those individuals. ICE picks up detained individuals from Dallas County on a regular schedule. As a result, at least in the past, Dallas County detains individuals for ICE for more than 48 hours. ICE does not always take custody of the individuals with immigration holds. Judge Snipes confirmed that "Dallas County would sometimes hold detainees more than 48 hours based on an ICE detainer." Ex. JJ ¶ 5.

31.     The fact that Dallas County overdetains based on immigration holds is reflected in emails authored by Sr. Sgt. Ric Bruner, the "ICE Liaison" employed by Dallas County. For example, the below email from Sr. Sgt. Bruner to Ray Hindieh (an attorney) shows that Dallas County does not immediately release detainees subject to an immigration hold. Instead, Dallas

County treats the immigration hold as if it were a criminal warrant from a sister county and holds individuals based solely on that hold:

> To answer your question regarding bonds: if you bond someone out on the state bond and they have an ICE hold, then they will be transferred to ICE custody. The federal hold works similar to a state hold with another agency. For example: Defendant posts a bond with Dallas County for BMV, but there is also a hold on him from Denton county for Theft. The jail notifies Denton County that the defendant posted the required bond with Dallas and Denton has 72 hours to pick him up or he will be released. ICE works the same way. The jail notifies ICE when the defendant has either posted their bond, has time served, probation, etc... and ICE has 48 hours to pick them up. A federal hold has the same weight as a state hold, unless the agency cancels the hold. The difference with federal holds (ICE holds) is unlike a state

Ex. W (Sr. Sgt. Bruner email dated July 28, 2015) at W1. Sr. Sgt. Bruner's analysis notwithstanding, Dallas County ignores the constitutional problems with detaining based solely with ICE holds—the Fourth Amendment allows Dallas County to detain based on probable cause of **criminal** violations (such as a Denton County charge of theft), but not based on probable cause of **civil** violations (such as a civil immigration violation). Judge Snipes confirmed that "Dallas County will treat a detainer from ICE just like Dallas County treats an arrest warrant from a different Texas county" and "Dallas County treats 'immigration holds' based on ICE detainers just like Dallas County treats holds occasioned by arrest warrants from other Texas counties." Ex. JJ ¶ 6. Sr. Sgt. Bruner confirmed in an email dated December 7, 2015, that Dallas County would not release an immigration hold caused by an ICE detainer:

> 3. I have no authority, nor does the DA's office have the authority to cancel a federal hold. If you want to get a detainer cancelled, you will need to go to the source, ICE, to get them to remove it. I can facilitate that, but I cant remove the hold; therefore the threats of having full blown hearings regarding this is a mute point because we don't have the authority to remove federal holds, nor does a state judge.
>
> Ric

Ex. X (Sr. Sgt. Bruner email dated December 7, 2016) at X1. The email exchange, below, is an example of Dallas County's practice of refusing immediate release when a detainee with an immigration hold tenders bond:

-----Original Message-----
From: Raymond Hindieh [mailto:rhindieh@phflaw.com]
Sent: Tuesday, December 02, 2014 2:23 PM
To: Ric Bruner
Subject: ██████████████████

Hey ric!

We discussed this guy with you before, and you had said that as long as we bond him out he won't be held on his immigration hold. We bonded him out and he wasn't released, and the bond desk is saying the won't release him because he has an immigration hold. Is there anything we can do to show the bond desk that he's ok to be bonded out? Thanks man! Sorry to hit you with a complicated issue in between the holidays.

Ray

---

From: Ric Bruner <RIC.BRUNER@dallascounty.org>
Sent: Tuesday, December 2, 2014 4:22 PM
To: Raymond Hindieh
Subject: RE: ██████████████████

Hey Ray,

I never said he wouldn't be held on his immigration hold. I said we (the DA's office) wont seek to hold his bond insufficient for that charge. He still has to go to ICE. He is going to ICE tomorrow morning.

Ric

Ex. Y (Email exchange between Sr. Sgt. Bruner and Mr. Hindieh dated December 2, 2014) at Y2. The email exchange above is evidence of the fact that Dallas County overdetains based solely on immigration holds.

32.    Judge Snipes confirmed that "Dallas County would not immediately release a detainee subject to an immigration hold that, absent the immigration hold, would have been immediately released. . . . [but] would instead hold the detainee, based on the immigration hold and ICE detainer, for transfer to ICE." Ex. JJ ¶ 7. Judge Snipes also confirmed that "Dallas County would not immediately release a detainee subject to an immigration hold that had paid bail, was found not guilty, had all charges dropped against him or her, served his or her sentence, or pleaded guilty and received no additional jail time. . . . [but] would instead hold the detainee, based on the immigration hold and ICE detainer, for transfer to ICE." *Id.* ¶ 8. In fact, Judge Snipes "do[es] not know of any detainees with immigration holds that were not

held for ICE after they otherwise should have been released, absent the immigration hold." *Id.* ¶ 9.

33. Dallas County's practices sharply contrast with those of Harris County. In October 2014, the Houston Chronicle reported that Harris County "almost instantaneously" transferred detainees to ICE custody, minimizing Fourth Amendment concerns. Ex. H at H1. Harris County manages to avoid prolonged detention even though Harris County processes around 300 detainers a month—almost twice that of Dallas County. *Compare id.* at H2 (300 detainers per month for Harris County) *with* Ex. Q at Q2 (160-170 detainers a month for Dallas County).

34. According to the <u>Texas Tribune</u>, Melinda Urbina, a spokesperson at the Dallas County Sheriff's Department, confirmed in February 2016 that if ICE asks Dallas County to hold an inmate for 48 hours, "the additional time typically does not begin until after the prisoner's county charges are resolved." Ex. U at U2. Ms. Urbina also stated that "[w]e follow what [ICE asks] us to do." *Id.* This is evidence of the fact that Dallas County holds detainees with immigration holds, at ICE's request, after the detainee's county charges are resolved.

### DALLAS COUNTY DENIES PRE-TRIAL RELEASE BASED ON ICE DETAINERS

35. Before November 2014, Dallas County would allow pretrial release for certain detainees with immigration holds. Sr. Sgt. Ric Bruner, the Dallas County ICE Liaison Officer, was responsible for determining which detainees subject to an ICE detainer were nevertheless eligible for bond. In the April 2014 email below, Sr. Sgt. Bruner provided Mr. Hindieh with stipulation forms to use when a detainee with an immigration hold was approved for pretrial release.



**From:** Ric Bruner <RIC.BRUNER@dallascounty.org>
**Sent:** Wednesday, April 23, 2014 12:32 PM
**To:** Raymond Hindieh
**Subject:** Stip forms

Hey Ray,

Here are the stip bond forms that we are using now. Please don't hesitate to shoot me an email regarding any requests you have. Just remember if your client has a misdemeanor case and is approved to receive an ICE bond, you need to go to LaQuita Long to sign off on the stip. If it's a felony, then please go to the ADA handling the case.

Thanks bro,

Ric

Sr. Sgt Ric Bruner #480
Criminal Investigator
DCDA I.C.E. Liaison Officer
NTFTF Officer/U.S. Marshals
▉▉▉▉▉▉ office

Ex. Z (Sr. Sgt. Bruner email dated April 23, 2014) at Z1.

36. At this time, if an immigration hold was in place, a detainee generally was not eligible for pretrial release. The June 2014 email below, from Sr. Sgt. Bruner to Mr. Hindieh, allows bond for a detainee because ICE intended to withdraw its request to detain.

**From:** Ric Bruner <RIC.BRUNER@dallascounty.org>
**Sent:** Tuesday, June 3, 2014 2:46 PM
**To:** Raymond Hindieh
**Subject:** Re: ▉▉▉▉▉▉▉▉▉▉

Hey Ray,

ICE is dropping the detainer on this guy today. He will probably be able to bond out today, or if he makes it to ICE, they will just release him. No need to do a stip in him.

Thanks,

Ric

Ex. AA (Sr. Sgt. Bruner email dated June 3, 2014) at AA1. The February 2015 email below, from Sr. Sgt. Bruner to Eric Puente (an attorney), also states that a detainee can leave jail only after ICE cancels its detainer:

From: Ric Bruner <RIC.BRUNER@dallascounty.org>
Sent: Thursday, February 26, 2015 3:27 PM
To: Eric Puente
Subject: █████████

Hey Eric,

Her detainer is going to be dropped.  Should be today.  She will be able to post bond from the jail and leave.

Ric

Ex. BB (Sr. Sgt. Bruner email dated February 26, 2015) at BB1. These emails are evidence of the fact that Dallas County generally would not allow bond for those with immigration holds. Judge Snipes confirmed that "if a detainee had an immigration hold, the detainee was generally not eligible for pretrial release." Ex. JJ ¶ 10; *see also id.* at ¶ 11 ("I do not know of any detainees with immigration holds that received immediate release on bond.")

37.      Dallas County changed its policies in late 2014, and stopped processing "stip bond forms" for pretrial release. Instead, if a detainee with an immigration hold were to pay bond, either (i) Dallas County would hold the detainee (ostensibly for less than 48 hours) for transfer to ICE (as described above), or (ii) on request from ICE, Mr. Bruner would ask a Dallas County Assistant District Attorney to notify the Court that the bond was insufficient, so that Dallas County could maintain custody over the detainee. Under either scenario, Dallas County refused immediate release on bond. Judge Snipes confirmed that "if a detainee has an immigration hold, Dallas County would not immediately release the detainee if he or she paid bond. . . . Dallas County would instead either (i) continue to detain the detainee for transfer to ICE, based on the ICE detainer, or (ii) ask an Assistant District Attorney to petition a court to find the bond insufficient." Ex. JJ ¶ 12.

38. Plaintiffs have evidence of the policy in the previous paragraph. First, as explained earlier, Dallas County treats immigration holds as if they were criminal warrants from a sister county:

> To answer your question regarding bonds:  if you bond someone out on the state bond and they have an ICE hold, then they will be transferred to ICE custody.  The federal hold works similar to a state hold with another agency.  For example: Defendant posts a bond with Dallas County for BMV, but there is also a hold on him from Denton county for Theft.  The jail notifies Denton County that the defendant posted the required bond with Dallas and Denton has 72 hours to pick him up or he will be released.  ICE works the same way.  The jail notifies ICE when the defendant has either posted their bond, has time served, probation, etc... and ICE has 48 hours to pick them up.  A federal hold has the same weight as a state hold, unless the agency cancels the hold.  The difference with federal holds (ICE holds) is unlike a state

Ex. W at W1. But an ICE hold is fundamentally different than a hold from a sister county. Unlike a hold from a sister county, an ICE hold is based on civil immigration violations, rather than suspicion of a crime. As explained earlier, the following email is an example of Dallas County's practice of refusing immediate release when a detainee with an immigration hold tenders bond:

> -----Original Message-----
> From: Raymond Hindieh [mailto:rhindieh@phflaw.com]
> Sent: Tuesday, December 02, 2014 2:23 PM
> To: Ric Bruner
> Subject: ███████████████
>
> Hey ric!
>
> We discussed this guy with you before, and you had said that as long as we bond him out he won't be held on his immigration hold. We bonded him out and he wasn't released, and the bond desk is saying the won't release him because he has an immigration hold. Is there anything we can do to show the bond desk that he's ok to be bonded out? Thanks man! Sorry to hit you with a complicated issue in between the holidays.
>
> Ray

> From: Ric Bruner <RIC.BRUNER@dallascounty.org>
> Sent: Tuesday, December 2, 2014 4:22 PM
> To: Raymond Hindieh
> Subject: RE: ███████████████
>
> Hey Ray,
>
> I never said he wouldn't be held on his immigration hold.  I said we (the DA's office) wont seek to hold his bond insufficient for that charge.  He still has to go to ICE.  He is going to ICE tomorrow morning.
>
> Ric

Ex. Y at Y2. The email exchange above is evidence of the facts that (i) Dallas County would detain inmates based solely on an immigration hold, and (ii) Dallas County had a practice of seeking to hold bonds insufficient for those with immigration holds.

39. Second, an email shows that Dallas County will affirmatively hold a detainee's bond insufficient to ensure that the detainee remains in custody for ICE. In December 2015, Sr. Sgt. Bruner explained to Mr. Puente that if a detainee cannot avoid removal, ICE will inform Dallas County of the same, and Dallas County will refuse bond on the basis of that determination:

---

**From:** Ric Bruner <RIC.BRUNER@dallascounty.org>
**Sent:** Monday, December 14, 2015 4:39 PM
**To:** Eric Puente
**Subject:** Re: ███████████

Eric,

We arent really doing those anymore. Instead we are going back to the normal Dallas county bond schedule and letting them go to ICE. You can contact ICE once she gets there to see if she will get a bond with them. If she is a reinstate or has no options to stay, then ICE will contact me before she goes to them and we will hold her bond insufficient and keep her here. If she does have options, then she will be sent to Johnson county or Haskell and wait until her IJ hearing. If you want her back to Dallas county after she gets there, you will need to get the judge to issue a bench warrant or hold her bond insufficient in order to get her back. If she is ordered removed before her criminal case is dispo'd, then ICE will contact me.

---

Ex. CC (Sr. Sgt. Bruner email dated December 14, 2015) at CC1. For example, on September 20, 2015, bail was set for Mr. Francisco Lara Martinez, for $15,000. Ex. DD (various records for F. Lara Martinez) at DD2. ICE sent a detainer to Dallas County. *Id.* at DD8. Mr. Lara Martinez tendered bond on September 21, 2015. *Id.* at DD6-7. But Dallas County nevertheless refused to release Mr. Lara Martinez. Instead, Sr. Sgt. Bruner's office requested that an ADA file a "notice of flight risk." The form used by Dallas County explicitly recognizes that Mr. Lara Martinez had already paid bail:

---

### NOTICE OF FLIGHT RISK

COMES NOW THE STATE OF TEXAS, by and through its Dallas County Assistant District Attorney ___Layne Jackson___, and hereby provides Notice to the Court that the above named defendant is a flight risk. The Immigration and Customs Enforcement Division (ICE) of the Department of Homeland Security has placed a detainer on the defendant who will be transferred to ICE custody prior to the defendant answering to the charge now pending against him/her.

The defendant is currently incarcerated in the Dallas County Jail for the offense of AA/DW, and has posted a $15,000 Surety Bond. In order to ensure the defendant's presence for this case, the State requests this Honorable Court to exercise its authority pursuant to Code of Criminal Procedure, Article 17.09, Section 3 and hold the bond insufficient and set a bond hearing, if the court believes such is warranted.

---

*Id.* at DD9. The Court held bond insufficient the next day, on September 22, 2015. *Id.* at DD10-11. Mr. Lara Martinez's treatment is evidence of the fact that Dallas County would not immediately release those with immigration holds, even if they paid bond. Instead, Dallas County would continue to hold the detainee while Sr. Sgt. Bruner's office sought to hold the bond insufficient. *See also infra* ¶ 80 (similar facts for Plaintiff Carlos Reyna Esparragoza).

40. As explained earlier, when Dallas County receives an ICE detainer, Dallas County places an "immigration hold" in the detainee's file. At times, the hold indicates that no bond is allowed, as shown by the file for Plaintiff Carlos Reyna Esparragoza:

| | |
|---|---|
| Hold   Agency ID: | |
| Bond Amount | 0.00 |
| Charge | ILLEGAL ALIEN |
| Warrant Number | 353180757 |
| Magistrate | |
| Remark | H/F IMMIGRATION NO BOND ALLOWED |

Additionally, the file for Plaintiff Julio Loera states "H/F INS NO BOND." Also, the file for Jose Lopez-Aranda (a plaintiff in the co-pending *Mercado* lawsuit) states "H/F IMMIGRATION/NO BOND," and the file for Efren Perez Villegas (a plaintiff in the co-pending *Mercado* lawsuit) states "H/F IMMIGRATION NO BOND ALLOWED." The notation in these files is evidence of the fact that Dallas County does not allow bond to those with immigration holds.

41.    On January 27, 2016, Sr. Sgt. Bruner emailed a number of attorneys, including Mr. Puente and Mr. Hindieh. Sr. Sgt. Bruner advised the attorneys that Dallas County would seek to hold bonds insufficient when (i) ICE tells Dallas County that the detainee cannot remain in the United States, (ii) a detainee is ordered removed by an immigration judge, or (iii) a detainee requests a voluntary removal:

> **From:** Ric Bruner <RIC.BRUNER@dallascounty.org>
> **Sent:** Wednesday, January 27, 2016 10:12 AM
> **To:** Dan Wood (danwoodjr@sbcglobal.net); Attorney Daniel Hernandez (hernandezlawfirm@me.com); Clark Birdsall (clarkbirds@aol.com); Diana Alonzo (diana@alonzolawfirm.com); Eric Puente; 'fernandez105@aol.com'; Katherine Reed (katherine@sualaw.com); omarnawazlaw@gmail.com; r.banda@yahoo.com; ROBERT DUENO (duenoroberto@icloud.com); Raymond Hindieh; 'Valeria Umpire (receptionist@alonzolawfirm.com)'
> **Cc:** Beatriz Gutierrez; Randall Johnson; Robert David Miller II
> **Subject:** Bonds and Bench Warrants
>
> Good morning all,
>
> As most of you know, the DA's office recently went back to giving defendants with immigration holds bonds based on the Dallas County bond schedule. What this means is no more $2500 cash for misdemeanors and $100,000 cash or surety for felonies. Instead, the defendant's with immigration holds will receive the same bond as U.S. citizens based on the Dallas County bond schedule for that offense and we will not seek to hold the bonds insufficient unless: 1. ICE tells me that the defendant doesn't have options to remain in the United States (ie: reinstates, ICE fugitives, etc..) before he is transferred to ICE custody or 2: they go to ICE and get ordered removed by an Immigration judge or request a voluntary return/departure.

Ex. EE (Sr. Sgt. Bruner email dated Jan. 27, 2016) at EE1. The email is evidence of the fact that, at ICE's request, Sr. Sgt. Bruner will ensure that a detainee is refused pre-trial release by asking an assistant district attorney to petition a court to hold a bond insufficient. Judge Snipes confirmed that he "[has] personal knowledge of detainees in Dallas County with immigration holds that (i) attempted to post bond, and (ii) were not granted pretrial release" and that he

"[has] heard, from others, of detainees in Dallas County with immigration holds that (i) attempted to post bond, and (ii) were not granted pretrial release." Ex. JJ ¶¶ 13-14.

42. By refusing pretrial release, Dallas County has effectively agreed to detain those awaiting civil removal proceedings for ICE.

43. Unquestionably, the federal government generally has the constitutional power to detain those awaiting civil removal proceedings, subject to limits imposed by Congress. But the Constitution treats Dallas County differently. Dallas County cannot constitutionally detain based solely on civil immigration violations, even if both Dallas County and ICE agents would prefer that Dallas County do so. And Dallas County cannot abridge the constitutional guarantee of criminal pretrial release and the presumption of innocence, even if that requires ICE to build additional detention centers to house those awaiting civil removal proceedings. Dallas County must allow the opportunity for immediate pretrial release on bond, even if ICE would prefer that Dallas County hold certain individuals pending civil removal proceedings.

44. In sum, Dallas County imposes pretrial detention on individuals subject to immigration holds (like Plaintiffs) in at least two ways. First, Dallas County denies bond by affirmatively seeking to hold a detainee's bond insufficient to ensure that the detainee remains in custody for ICE. This directly imposes pretrial detention. Because Dallas County will not release a detainee with an immigration hold even when bond is met, bail is illusory. Dallas County imposes pretrial detention by not allowing bonds for individuals with immigration holds. Second, even if individuals subject to immigration holds are cleared for release (such as after a plea hearing), Dallas County detains those individuals pending transfer to ICE. Thus, even if Dallas County accepts bond, the bond does not result in release. On payment, Dallas County instead maintains pretrial detention, pending transfer to ICE. Judge Snipes confirmed

29

that "if a detainee has an immigration hold, Dallas County would not immediately release the detainee if he or she paid bond. . . . Dallas County would instead either (i) continue to detain the detainee for transfer to ICE, based on the ICE detainer, or (ii) ask an Assistant District Attorney to petition a court to find the bond insufficient." Ex. JJ ¶ 12.

45.     Based on the evidence above, Plaintiffs claim the following fact: Dallas County refuses immediate release on bond for any detainee with an immigration hold. Judge Snipes confirmed that "if a detainee has an immigration hold, the detainee was generally not eligible for pretrial release" and that he "[does] not know of any detainees with immigration holds that received immediate release on bond." *Id.* ¶¶ 10-11.

46.     Dallas County's practices are widely known by immigration attorneys, criminal attorneys, judges, and the community. Judge Snipes confirmed that "Dallas County's refusal to allow pretrial release for detainees subject to immigration holds was widely known by immigration attorneys, criminal attorneys, judges, and the community" and that "[i]t is widely known that Dallas County will not immediately release detainees with immigration holds, even if they post bond." Ex. JJ ¶¶ 16-17. As a result, attempting to post bond is known as a futile exercise for those with immigration holds, because it will not result in immediate release. Judge Snipes confirmed that he "would not expect detainees with immigration holds to attempt to pay bond, because Dallas County would not release those detainees on payment of the bond." Ex. JJ ¶ 18. The scheme has predictable effects. Because Dallas County will not immediately release those on bond, individuals with immigration holds generally do not waste money by attempting to post bond, and Dallas County maintains pretrial detention over almost all individuals with immigration holds.

47.     Plaintiffs claim the following fact: it is widely known that Dallas County will not immediately release a detainee with an immigration hold, even if they post bond. Judge Snipes confirmed that "detainees with immigration detainers would not receive immediate release on bond," "Dallas County's refusal to allow pretrial release for detainees subject to immigration holds was widely known by immigration attorneys, criminal attorneys, judges, and the community," and "it is widely known that Dallas County will not immediately release detainees with immigration holds, even if they post bond." Ex. JJ ¶¶ 15-17.

48.     Dallas County's failure to provide immediate release on bond offends state law. Under state law, the accused must "shall at once be set at liberty" upon payment of bond. TEX. CODE CRIM. PROC. § 17.29(a). Dallas County cannot rely solely on a request to detain from ICE to justify any further arrest or detention, for at least the following reasons:

- Pursuant to Texas statute, all arrests generally require a warrant. An ICE request to detain is not a warrant, and the ICE request to detain does not satisfy any statutory exception that would allow Dallas County to arrest Plaintiffs without a warrant.

- Dallas County cannot show probable cause to believe that a different criminal offense has been or is being committed, and Dallas County has no other authority to detain that satisfies Article I, Section 9, of the Texas Constitution.

- Dallas County cannot show probable cause to believe that a different criminal offense has been or is being committed, and Dallas County has no other authority to detain that satisfies the Fourth Amendment of the United States Constitution.

49.     Dallas County's wrongful two-part scheme predictably results in pretrial detention over most individuals with immigration holds. Dallas County reported to the Texas Commission on Jail Standards that, in November 2016, Dallas County held 497 prisoners that were subject to an ICE request to detain. The Dallas Morning News reported that, between January 1, 2015, to October 26, 2015, Dallas County "accepted 1469 detainers from ICE and declined

zero." Ex. T at T1. Due to its two-part practice of refusing immediate release on bond to those with immigration holds, Dallas County unconstitutionally imposed pretrial detention on most of those individuals subject to detainer.

50.    Dallas County and Sheriff Valdez are responsible for Dallas County's policy and practice of refusing immediate release on bond to individuals with immigration holds by (i) refusing to allow bond for those with immigration holds, and (ii) detaining individuals subject to an immigration hold, even after those individuals make bail or are otherwise cleared for release. In particular, Sheriff Valdez oversees and is responsible for Dallas County's decisions on (i) whether to allow bond posted for those with immigration holds, and (ii) whether to detain individuals with immigration holds that make bail or are otherwise cleared for release.

DALLAS COUNTY OVERDETAINED PLAINTIFFS WITHOUT PROBABLE CAUSE OF A CRIMINAL VIOLATION

51.    As explained in more detail below, Plaintiffs were overdetained by Dallas County. Dallas County held Plaintiffs for transfer to ICE, even after they paid bail or otherwise should have been released. Dallas County did not have probable cause of criminal activity when it held each Plaintiff for transfer to ICE.

52.    Dallas County's practice of honoring ICE requests to detain, even after those individuals otherwise would otherwise be released, denies Plaintiffs their rights under the Fourth Amendment to the United States Constitution. After individuals have served their sentence, are sentenced to time served, are found not guilty, or have their charges dismissed, Dallas County does not have probable cause to believe that a different criminal offense has been or is being committed (based on a detainer that only lists civil immigration violations) and has no other authority to detain that satisfies the Fourth Amendment. Dallas County and Sheriff Valdez are responsible for Dallas County's policy of detaining individuals subject to an

32

immigration hold, even after those individuals otherwise would be released, and are thus responsible for this constitutional violation.

53.     Plaintiffs' overdetention claims do not turn on the availability of bail. Each Plaintiff, below, was detained after (i) Dallas County dropped all pending criminal charges, (ii) the detainee was found innocent of all pending criminal charges, (iii) the detainee pleaded guilty but received no additional jail time, or (iv) the detainee pleaded guilty and served his sentence in Dallas County Jail. Whether or not each Plaintiff paid bail, each Plaintiff should have been released after (i) Dallas County dropped all pending criminal charges, (ii) the detainee was found innocent of all pending criminal charges, (iii) the detainee pleaded guilty but received no additional jail time, or (iv) the detainee pleaded guilty and served his sentence in Dallas County Jail. Because Dallas County continued to maintain custody without separate probable cause of a criminal offense, Dallas County's overdetention of the Plaintiffs offends the Fourth Amendment.

54.     **Overdetention of Jose Delcid Bonilla.** After he was arrested, an immigration hold was placed on Mr. Delcid Bonilla, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Delcid Bonilla, requesting that Dallas County detain Mr. Delcid Bonilla after he otherwise

33

would be released for transfer to ICE. Mr. Delcid Bonilla pleaded guilty to a class C misde-

meanor, which does not carry any jail time, in May 2016, as shown below:

THE STATE OF TEXAS

VS.

*Jose Delcid Bonilla*

CAUSE NO. F *1524807-K*

*CRIMINAL* DISTRICT COURT *4*

DALLAS COUNTY, TEXAS

**PLEA AGREEMENT**

State ID No: ▮▮▮▮▮▮

Attorney for State: *Brad Carpenter*

Offense: *Assault*

Statute for Offense: _____

Date of Offense: *11-02-2015*

Incident No / TRN: _____

Attorney for Defendant: *Erin Garey*

Charging Instrument: ☒ Indictment ☐ Information

Degree of Offense: *Class C*

Affirmative finding of deadly weapon: ☐ YES ☒ NO   Type of Weapon: _____

Affirmative finding of family violence: ☐ YES ☒ NO   Ignition Interlock required ☐ YES ☐ NO

Affirmative finding of bias or prejudice: ☐ YES ☒ NO   If yes, Group: _____

Sentence to run   ☐ CONCURRENTLY   ☐ CONSECUTIVELY   WITH _____

Time Credit:   From *12\2\15*   To *today*   From _____ To _____

Sex Offender Registration ☐ DOES ☐ DOES NOT apply.   Age of victim at time of offense: _____

**COURT'S ADMONITIONS TO DEFENDANT**

You are charged with the offense of: _____.
The punishment range for the offense charged is:

☐ 1st Degree Felony, 5-99 years or Life and an optional fine not to exceed $10,000.00
☐ 2nd Degree Felony, 2-20 years confinement and an optional fine not to exceed $10,000.00
☐ 3rd Degree Felony, 2-10 years confinement and an optional fine not to exceed $10,000.00
☐ State Jail Felony, 180 days – 2 years State Jail and an optional fine not to exceed $10,000.00
☒ *Class C assault - $0 $500*         .

Despite receiving no jail time, Mr. Delcid Bonilla was not immediately released from Dallas

County custody, even though Dallas County no longer had probable cause to hold him for his

original purported criminal offense. Instead, Dallas County maintained custody over Mr.

Delcid Bonilla for transfer to ICE. Dallas County thus overdetained Mr. Delcid Bonilla for trans-

fer to ICE. The only hold listed in Mr. Delcid Bonilla's file is the immigration hold. This is

evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense

from another county or state, and (ii) Dallas County held Mr. Delcid Bonilla due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Delcid Bonilla. Mr. Delcid Bonilla does not have a copy of the detainer that ICE sent Dallas County. Mr. Delcid Bonilla nevertheless claims, as a fact, that the detainer does not indicate that Mr. Delcid Bonilla had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Delcid Bonilla had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Delcid Bonilla was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Delcid Bonilla's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Delcid Bonilla had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Delcid Bonilla claims as fact that there is nothing in the IDENT database that would indicate that Mr. Delcid Bonilla had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Delcid Bonilla had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Delcid Bonilla had committed or was committing a crime. Based on this evidence, Mr. Delcid Bonilla claims as fact that Dallas County overdetained him

solely based on an ICE detainer, and that the ICE detainer did not indicate that Mr. Delcid Bonilla had committed or was committing a crime. Thus, Dallas County held Mr. Delcid Bonilla for transfer to ICE without probable cause that Mr. Delcid Bonilla had committed or was committing a crime. As a result, Dallas County violated the Fourth Amendment.

55. **Overdetention of Juan Camacho.** After he was arrested, an immigration hold was placed on Mr. Camacho, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Camacho, requesting that Dallas County detain Mr. Camacho after he otherwise would be released for transfer to ICE. Mr. Camacho was convicted of attempted assault and was sentenced to time in county jail. After serving his sentence, Mr. Camacho was not immediately released from Dallas County custody, even though Dallas County no longer had probable cause to hold him for his original purported criminal offense. Instead, Dallas County maintained custody over Mr. Camacho for transfer to ICE. Dallas County thus overdetained Mr. Camacho for transfer to ICE. Mr. Camacho knew of no hold that might justify further detention besides the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr.

Camacho due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Camacho. Mr. Camacho does not have a copy of the detainer that ICE sent Dallas County. Mr. Camacho nevertheless claims, as a fact, that the detainer does not indicate that Mr. Camacho had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Camacho had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Camacho was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Camacho's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Camacho had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Camacho claims as fact that there is nothing in the IDENT database that would indicate that Mr. Camacho had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Camacho had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Camacho had committed or was committing a crime. Based on this evidence, Mr. Camacho claims as fact that Dallas County overdetained him solely based on an ICE detainer, and that the ICE detainer did not indicate that Mr. Camacho had committed or was

committing a crime. Thus, Dallas County held Mr. Camacho for transfer to ICE without probable cause that Mr. Camacho had committed or was committing a crime. As a result, Dallas County violated the Fourth Amendment.

56.     **Overdetention of Maria Castillo.** After she was arrested, an immigration hold was placed on Ms. Castillo, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Ms. Castillo, requesting that Dallas County detain Ms. Castillo after she otherwise would be released for transfer to ICE. Ms. Castillo was convicted and given a suspended setence. But Ms. Castillo was not immediately released from Dallas County custody, even though Dallas County no longer had probable cause to hold her for her original purported criminal offense. Instead, Dallas County maintained custody over Ms. Castillo for transfer to ICE. Dallas County thus overdetained Ms. Castillo for transfer to ICE. The only hold listed in Ms. Castillo's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Ms. Castillo due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Ms. Castillo. Ms. Castillo does not have a copy of the detainer that ICE sent Dallas

County. Ms. Castillo nevertheless claims, as a fact, that the detainer does not indicate that Ms. Castillo had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Based on this evidence, Ms. Castillo claims as fact that Dallas County overdetained her solely based on an ICE detainer, and that the ICE detainer did not indicate that Ms. Castillo had committed or was committing a crime. Thus, Dallas County held Ms. Castillo for transfer to ICE without probable cause that Ms. Castillo had committed or was committing a crime. As a result, Dallas County violated the Fourth Amendment.

57. **Overdetention of Carlos Fuente Páramo.** After he was arrested, an immigration hold was placed on Mr. Fuente Páramo, as shown below:

| | | |
|---|---|---|
| Hold | Agency ID: | |
| Bond Amount | 0.00 | |
| Charge | ILLEGAL ALIEN | |
| Warrant Number | DAL1511000 | |
| Magistrate | | |
| Remark | H/F IMMIGRATION | |

The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Fuente Páramo, requesting that Dallas County detain Mr. Fuente Páramo after he otherwise would be released for transfer to ICE. Mr. Fuente Páramo was convicted and received a suspended sentence. But Mr. Fuente Páramo was not immediately released from Dallas County custody, even though Dallas County no longer had probable cause to hold him for his original purported criminal offense. Instead, Dallas County maintained custody over Mr. Fuente Páramo for transfer to ICE. Dallas County thus overdetained Mr. Fuente Páramo for transfer to

ICE. Mr. Fuente Páramo knew of no hold that might justify further detention besides the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Fuente Páramo due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Fuente Páramo. Mr. Fuente Páramo does not have a copy of the detainer that ICE sent Dallas County. Mr. Fuente Páramo nevertheless claims, as a fact, that the detainer does not indicate that Mr. Fuente Páramo had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Fuente Páramo had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Fuente Páramo was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Fuente Páramo's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Fuente Páramo had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Fuente Páramo claims as fact that there is nothing in the IDENT database that would indicate that Mr. Fuente Páramo had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Fuente Páramo had committed or was committing a crime,

the detainer provided by ICE to Dallas County did not show that Mr. Fuente Páramo had committed or was committing a crime. Based on this evidence, Mr. Fuente Páramo claims as fact that Dallas County overdetained him solely based on an ICE detainer, and that the ICE detainer did not indicate that Mr. Fuente Páramo had committed or was committing a crime. Thus, Dallas County held Mr. Fuente Páramo for transfer to ICE without probable cause that Mr. Fuente Páramo had committed or was committing a crime. As a result, Dallas County violated the Fourth Amendment.

58.    **Overdetention of Abel Hernandez.** After he was arrested, an immigration hold was placed on Mr. Hernandez, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Hernandez, requesting that Dallas County detain Mr. Hernandez after he otherwise would be released for transfer to ICE. Dallas County dismissed the charges against Mr. Hernandez, pretrial, as shown below:

41

DALLAS COUNTY

# THE STATE OF TEXAS,

No. M15-61160     vs.     §

HERNANDEZ, ABEL

ASSAULT

2015 DEC -8 AM 10: 50

IN THE COUNTY CRIMINAL

COURT No. 10    0. CRIMINAL COURT NO. 10 DALLAS COUNTY TEXAS

OF DALLAS COUNTY, TEXAS    BY_____DEPUTY

OCTOBER TERM, A.D., 2015

Now comes the District Attorney of Dallas County, Texas and asks the Court to dismiss the above entitled and numbered cause, for the following reasons, to-wit:

This case was set in court on December 8, 2015. The State of Texas has is unable to procure the presence and testimony of Sonia Hernandez, the complaining witness in this case. At this time there is no probability that the witness will become available for trial in the foreseeable future.

As a result of a recent Dallas Court of Appeals case interpreting *Crawford v. Washington*, 54 U.S. 36 (2004), the State will be unable to present a prima facie case without the testimony of this witness. Even if the State could get past a Crawford hearing, the State will be unable to present a prima facie case without the identification of the defendant.

WHEREFORE PREMISES CONSIDERED, the State respectfully requests that this case be dismissed.

## ORDER

The above Motion came to be heard on this the ___8___ day of ___December___, 2015 and said Motion is hereby GRANTED / DENIED.

_____
PRESIDING JUDGE

_____
Assistant District Attorney of
Dallas County, Texas

_____
For Susan Hawk
District Attorney of Dallas County, Texas

Despite the dismissal of the charges, Mr. Hernandez was not immediately released from Dallas County custody, even though Dallas County no longer had probable cause to hold him for his original purported criminal offense. Instead, Dallas County maintained custody over Mr. Hernandez for transfer to ICE. Dallas County thus overdetained Mr. Hernandez for transfer to ICE. The only hold listed in Mr. Hernandez's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Hernandez due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Hernandez. Mr. Hernandez does not have a copy of the detainer that ICE sent Dallas County. Mr. Hernandez nevertheless claims, as a fact, that the detainer does not indicate that Mr. Hernandez had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Hernandez had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Hernandez was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Hernandez's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Hernandez had not been

43

charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Hernandez claims as fact that there is nothing in the IDENT database that would indicate that Mr. Hernandez had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Hernandez had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Hernandez had committed or was committing a crime. Based on this evidence, Mr. Hernandez claims as fact that Dallas County overdetained him solely based on an ICE detainer, and that the ICE detainer did not indicate that Mr. Hernandez had committed or was committing a crime. Thus, Dallas County held Mr. Hernandez for transfer to ICE without probable cause that Mr. Hernandez had committed or was committing a crime. As a result, Dallas County violated the Fourth Amendment.

59. **Overdetention of Salvador Jauregui.** After he was arrested, an immigration hold was placed on Mr. Jauregui, as shown below:



| | |
|---|---|
| Hold | Agency ID |
| Bond Amount | 0.00 |
| Charge | ILLEGAL ALIEN |
| Warrant Number | 353974343 |
| Magistrate | |
| Remark | H/F INS |

The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Jauregui, requesting that Dallas County detain Mr. Jauregui after he otherwise would be released for transfer to ICE. Dallas County dismissed the charges against Mr. Jauregui, pre-trial, as shown below:

FILED

685/
141

**THE STATE OF TEXAS,**
2016 FEB -4  AM 10: 58

No. F1: 524706

A PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
DEPUTY

**SALVADOR JAUREGUI**

283RD JUDICIAL DISTRICT

**COURT**

**OF DALLAS COUNTY, TEXAS**
**JANUARY TERM, A.D., 2016**

Now comes the District Attorney of Dallas County, Texas and asks the Court to dismiss the above entitled and numbered cause, for the following reasons, to-wit:

Despite rigorous attempts by the Dallas County District Attorney's Office, the State of Texas has

been unable to procure the testimony of the complaining witness.

As a result of a Dallas Court of Appeals case interpreting *Crawford v. Washington*, 54 U.S. 36

(2004), the State will be unable to present a prima facie case without the testimony of this witness.

WHEREFORE PREMISES CONSIDERED, the State respectfully requests that these cases be dismissed.

**ORDER**

The foregoing motion is granted on the ___ day of Feb, 2016

Criminal District Court Judge

265

Assistant District Attorney of
Dallas County, Texas

For Toby Stock
District Attorney of Dallas County, Texas

EPN
2-5-16

46

Despite the dismissal of the charges, Mr. Jauregui was not immediately released from Dallas County custody, even though Dallas County no longer had probable cause to hold him for his original purported criminal offense. Instead, Dallas County maintained custody over Mr. Jauregui for transfer to ICE. Dallas County thus overdetained Mr. Jauregui for transfer to ICE. The only hold listed in Mr. Jauregui's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Jauregui due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Jauregui. Mr. Jauregui does not have a copy of the detainer that ICE sent Dallas County. Mr. Jauregui nevertheless claims, as a fact, that the detainer does not indicate that Mr. Jauregui had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Jauregui had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Jauregui was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Jauregui's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Jauregui had not been charged with an immi-

47

gration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Jauregui claims as fact that there is nothing in the IDENT database that would indicate that Mr. Jauregui had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Jauregui had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Jauregui had committed or was committing a crime. Based on this evidence, Mr. Jauregui claims as fact that Dallas County overdetained him solely based on an ICE detainer, and that the ICE detainer did not indicate that Mr. Jauregui had committed or was committing a crime. Thus, Dallas County held Mr. Jauregui for transfer to ICE without probable cause that Mr. Jauregui had committed or was committing a crime. As a result, Dallas County violated the Fourth Amendment.

60.    **Overdetention of Julio Loera.** After he was arrested, an immigration hold was placed on Mr. Loera, as shown below:

The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Loera, requesting that Dallas County detain Mr. Loera after he otherwise would be released for transfer to ICE. Mr. Loera entered a plea bargain that included deferred adjudication and probation:

| Findings on 1st Enhancement Paragraph: | N/A | Findings on 2nd Enhancement/Habitual Paragraph: | N/A |
|---|---|---|---|
| **ADJUDICATION OF GUILT DEFERRED; DEFENDANT PLACED ON COMMUNITY SUPERVISION.** | | | |
| **PERIOD OF COMMUNITY SUPERVISION: 5 YEARS** | | | |
| Fine: | Court Costs: | Restitution: | Restitution Payable to: ☐ AGENCY/AGENT |

Despite receiving no jail time, Mr. Loera was not immediately released from Dallas County custody, even though Dallas County no longer had probable cause to hold him for his original purported criminal offenses. Instead, Dallas County maintained custody over Mr. Loera for transfer to ICE. Dallas County thus overdetained Mr. Loera for transfer to ICE. The only hold listed in Mr. Loera's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Loera due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Loera. Mr. Loera does not have a copy of the detainer that ICE sent Dallas County. Mr. Loera nevertheless claims, as a fact, that the detainer does not indicate that Mr. Loera had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Loera had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Loera was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Loera's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the

detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Loera had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Loera claims as fact that there is nothing in the IDENT database that would indicate that Mr. Loera had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Loera had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Loera had committed or was committing a crime. Based on this evidence, Mr. Loera claims as fact that Dallas County overdetained him solely based on an ICE detainer, and that the ICE detainer did not indicate that Mr. Loera had committed or was committing a crime. Thus, Dallas County held Mr. Loera for transfer to ICE without probable cause that Mr. Loera had committed or was committing a crime. As a result, Dallas County violated the Fourth Amendment.

61.     **Overdetention of Arturo Muñoz Martinez.** After he was arrested, an immigration hold was placed on Mr. Muñoz Martinez, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Muñoz Martinez, requesting that Dallas County detain Mr. Muñoz Martinez after he otherwise would be released for transfer to ICE. Mr. Muñoz Martinez entered a plea bargain that included 7 years deferred community supervision, in lieu of confinement:

State's recommendation:

. Agreed sentence:

[ ] Confinement in [ ] penitentiary [ ] state jail [ ] county jail for _____ [ ] years [ ] months [ ] days

[ ] Post-conviction community supervision, confinement probated for _____ [ ] years [ ] months [ ] days

[X] Deferred community supervision for ____7____ [X] years [ ] months [ ] days

[X] Fine of $ __2500__ [ ] to be paid [ ] to be probated

Despite receiving no jail time, Mr. Muñoz Martinez was not immediately released from Dallas County custody, even though Dallas County no longer had probable cause to hold him for his original purported criminal offenses. Instead, Dallas County maintained custody over Mr. Muñoz Martinez for transfer to ICE. Dallas County thus overdetained Mr. Muñoz Martinez for transfer to ICE. The only hold listed in Mr. Muñoz Martinez's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Muñoz Martinez due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Muñoz Martinez. Mr. Muñoz Martinez does not have a copy of the detainer that ICE sent Dallas County. Mr. Muñoz Martinez nevertheless claims, as a fact, that the detainer does not indicate that Mr. Muñoz Martinez had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Muñoz Martinez had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Muñoz Martinez was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); im-migration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien

51

for immoral purpose (8 U.S.C. § 1328). Mr. Muñoz Martinez's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Muñoz Martinez had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Muñoz Martinez claims as fact that there is nothing in the IDENT database that would indicate that Mr. Muñoz Martinez had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Muñoz Martinez had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Muñoz Martinez had committed or was committing a crime. Based on this evidence, Mr. Muñoz Martinez claims as fact that Dallas County overdetained him solely based on an ICE detainer, and that the ICE detainer did not indicate that Mr. Muñoz Martinez had committed or was committing a crime. Thus, Dallas County held Mr. Muñoz Martinez for transfer to ICE without probable cause that Mr. Muñoz Martinez had committed or was committing a crime. As a result, Dallas County violated the Fourth Amendment.

62.   **Overdetention of Alberto Sanchez Chavez.** After he was arrested, an immigration hold was placed on Mr. Sanchez Chavez, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Sanchez Chavez, requesting that Dallas County detain Mr. Sanchez Chavez after he otherwise would be released for transfer to ICE. Mr. Sanchez Chavez received a sixty-day sentence in Dallas County Jail.

| Date Sentence Imposed: | 1/6/2016 | Date Sentence to Commence: | 1/6/2016 |
|---|---|---|---|
| Punishment and Place of Confinement: | 60 DAYS COUNTY JAIL | | |
| | THIS SENTENCE SHALL RUN CONCURRENTLY. | | |

After he served his sentence, Mr. Sanchez Chavez was not immediately released from Dallas County custody, even though Dallas County no longer had probable cause to hold him for his original purported criminal offenses. Instead, Dallas County maintained custody over Mr. Sanchez Chavez for transfer to ICE. Dallas County thus overdetained Mr. Sanchez Chavez for transfer to ICE. The only hold listed in Mr. Sanchez Chavez's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Sanchez Chavez due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Sanchez Chavez. Mr. Sanchez Chavez does not have a copy of the detainer that ICE sent Dallas County. Mr. Sanchez Chavez nevertheless claims, as a fact, that the detainer does not indicate that Mr. Sanchez Chavez had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Sanchez Chavez had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Sanchez Chavez was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. §

53

1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Sanchez Chavez's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Sanchez Chavez had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Sanchez Chavez claims as fact that there is nothing in the IDENT database that would indicate that Mr. Sanchez Chavez had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Sanchez Chavez had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Sanchez Chavez had committed or was committing a crime. Based on this evidence, Mr. Sanchez Chavez claims as fact that Dallas County overdetained him solely based on an ICE detainer, and that the ICE detainer did not indicate that Mr. Sanchez Chavez had committed or was committing a crime. Thus, Dallas County held Mr. Sanchez Chavez for transfer to ICE without probable cause that Mr. Sanchez Chavez had committed or was committing a crime. As a result, Dallas County violated the Fourth Amendment.

63.   **Overdetention of Abraham Santana.** After he was arrested, an immigration hold was placed on Mr. Santana, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Santana, requesting that Dallas County detain Mr. Santana after he otherwise would be released for transfer to ICE. Mr. Santana received an order of deferred adjudication, and was placed on community supervision for five years:

| Paragraph: | N/A | Enhancement/Habitual Paragraph: | N/A |
|---|---|---|---|
| | **ADJUDICATION OF GUILT DEFERRED;** | | |
| | **DEFENDANT PLACED ON COMMUNITY SUPERVISION.** | | |
| | **PERIOD OF COMMUNITY SUPERVISION: 5 YEARS** | | |

Even though he was not sentenced to further jail time, Mr. Santana was not immediately released from Dallas County custody, even though Dallas County no longer had probable cause to hold him for his original purported criminal offenses. Instead, Dallas County maintained custody over Mr. Santana for transfer to ICE. Dallas County thus overdetained Mr. Santana for transfer to ICE. Mr. Santana knew of no hold that might justify further detention besides the immigration hold.  This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Santana due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Santana. Mr. Santana does not have a copy of the detainer that ICE sent Dallas County. Mr. Santana nevertheless claims, as a fact, that the detainer does not indicate that Mr. Santana had committed or was committing a crime. The form used by ICE generally indicates

civil immigration violations, not criminal violations. Further, Mr. Santana had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Santana was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Santana's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Santana had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Santana claims as fact that there is nothing in the IDENT database that would indicate that Mr. Santana had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Santana had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Santana had committed or was committing a crime. Based on this evidence, Mr. Santana claims as fact that Dallas County overdetained him solely based on an ICE detainer, and that the ICE detainer did not indicate that Mr. Santana had committed or was committing a crime. Thus, Dallas County held Mr. Santana for transfer to ICE without probable cause that Mr. Santana had committed or was committing a crime. As a result, Dallas County violated the Fourth Amendment.

<u>DALLAS COUNTY DENIED PLAINTIFFS PRE-TRIAL RELEASE BASED ON AN ICE DETAINER</u>

64.     As described earlier, Plaintiffs claim the fact that Dallas County refuses immediate release on bond for any detainee with an immigration hold. More particularly, Dallas County denied pre-trial release to the Plaintiffs listed below.

65.     Dallas County abridged, in two ways, Plaintiffs' freedom from pretrial detention protected by the Fourth and Fourteenth Amendments to the United States Constitution. First, Dallas County's practice of refusing to allow bond for individuals with immigration holds directly results in unconstitutional pretrial detention. Dallas County and Sheriff Valdez are responsible for the County's policy of refusing to allow bond for individuals with immigration holds, and are thus responsible for this constitutional violation. Second, even if Dallas County accepts the bond, because Dallas County has a policy and practice of wrongfully detaining individuals with immigration holds for ICE on request (e.g., in violation of Texas statutes, the Texas Constitution, and the United States Constitution), Dallas County denies immediate release on bond, indirectly resulting in unconstitutional pretrial detention. Dallas County and Sheriff Valdez are responsible for the County's policy of detaining individuals subject to an immigration hold, even after those individuals are otherwise cleared for release, and are thus responsible for this constitutional violation.

66.     Each of the Plaintiffs listed below either (i) posted bond and was denied pre-trial release due to an ICE detainer, or (ii) did not attempt to post bond because he believed that doing so would be futile, as a result of Dallas County's policies and practices explained above. In particular, Plaintiffs claim as fact that, under Dallas County's policies and practices, if a detainee with an immigration hold were to pay bond, either (i) Dallas County would hold the detainee (ostensibly for less than 48 hours) for transfer to ICE (as described above), or (ii)

57

on request from ICE, Mr. Bruner would ask a Dallas County Assistant District Attorney to notify the Court that the bond was insufficient, so that Dallas County could maintain custody over the detainee. *See supra* ¶¶ 37-45. As explained *supra*, Dallas County's policies and practices are widely known by immigration attorneys, criminal attorneys, judges, and the community. *See supra* ¶¶ 46-47.

67.    Plaintiffs claim as fact that immigration attorneys, criminal attorneys, judges, the community, and the Plaintiffs identified below, knew that Dallas County never afforded immediate release on bond for those with immigration holds and ICE detainers. Because Dallas County set up a system where those with immigration holds and ICE detainers could not receive immediate release on bond, Dallas County cannot claim surprise when most detainees with immigration holds or ICE detainers do not waste the time or money to secure bond in a futile effort to obtain immediate release.

68.    **Refusal of Pre-Trial Release for Jose Delcid Bonilla.** After he was arrested, an immigration hold was placed on Mr. Delcid Bonilla, as shown below:



| | |
|---|---|
| Hold | Agency ID |
| Bond Amount | 0.00 |
| Charge | ILLEGAL ALIEN |
| Warrant Number | 354418483 |
| Magistrate | |
| Remark | HF INS |

The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Delcid Bonilla, requesting that Dallas County detain Mr. Delcid Bonilla after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Delcid Bonilla in February

2015, showing that Mr. Delcid Bonilla was eligible for pretrial release. Mr. Delcid Bonilla attempted to pay bail, but Dallas County would not allow him to. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Delcid Bonilla to pay bail on his original purported criminal offense, Dallas County should have released Mr. Delcid Bonilla, as Dallas County had no other basis to believe that Mr. Delcid Bonilla had committed or was committing a criminal offense. Thus, to further detain Mr. Delcid Bonilla, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Delcid Bonilla. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence. The only hold listed in Mr. Delcid Bonilla's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Delcid Bonilla due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Delcid Bonilla. Mr. Delcid Bonilla does not have a copy of the detainer that ICE sent Dallas County. Mr. Delcid Bonilla nevertheless claims, as a fact, that the detainer does not indicate that Mr. Delcid Bonilla had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Delcid Bonilla had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Delcid Bonilla was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal

reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Delcid Bonilla's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Delcid Bonilla had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Delcid Bonilla claims as fact that there is nothing in the IDENT database that would indicate that Mr. Delcid Bonilla had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Delcid Bonilla had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Delcid Bonilla had committed or was committing a crime. Based on this evidence, Mr. Delcid Bonilla claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Delcid Bonilla pretrial.

69.    **Refusal of Pre-Trial Release For Juan Camacho.** After he was arrested, an immigration hold was placed on Mr. Camacho, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Camacho, requesting that Dallas County detain Mr. Camacho after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Camacho in September 2015, showing that Mr. Camacho was eligible for pretrial release. Mr. Camacho did not attempt to pay bond because he believed it was futile to do so. It was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Mr. Camacho knew that he had an immigration hold. But for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration hold, Mr. Camacho could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Camacho to pay bail on his original purported criminal offense, Dallas County should have released Mr. Camacho, as Dallas County had no other basis to believe that Mr. Camacho had committed or was committing a criminal offense. Thus, to further detain Mr. Camacho, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Camacho. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence.  Mr. Camacho knew of no hold that might justify further detention besides the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Camacho due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Camacho. Mr. Camacho does not have a copy of the detainer that ICE sent Dallas County. Mr. Camacho nevertheless claims, as a fact, that the detainer does not indicate that Mr. Camacho had committed or was committing a crime. The form used by ICE generally indicates

civil immigration violations, not criminal violations. Further, Mr. Camacho had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Camacho was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Camacho's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Camacho had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Camacho claims as fact that there is nothing in the IDENT database that would indicate that Mr. Camacho had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Camacho had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Camacho had committed or was committing a crime. Based on this evidence, Mr. Camacho claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Camacho pretrial.

70. **Refusal of Pre-Trial Release For Maria Castillo.** After she was arrested, an immigration hold was placed on Ms. Castillo, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Ms. Castillo, requesting that Dallas County detain Ms. Castillo after she otherwise would be released for transfer to ICE. Bail was nominally set for Ms. Castillo in November 2015, showing that Ms. Castillo was eligible for pretrial release. Ms. Castillo did not attempt to pay bond because she believed it was futile to do so. It was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Ms. Castillo knew that she had an immigration hold. But for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration hold, Ms. Castillo could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Ms. Castillo to pay bail on her original purported criminal offense, Dallas County should have released Ms. Castillo, as Dallas County had no other basis to believe that Ms. Castillo had committed or was committing a criminal offense. Thus, to further detain Ms. Castillo, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Ms. Castillo. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence.

The only hold listed in Ms. Castillo's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Ms. Castillo due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Ms. Castillo. Ms. Castillo does not have a copy of the detainer that ICE sent Dallas County. Ms. Castillo nevertheless claims, as a fact, that the detainer does not indicate that Ms. Castillo had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Based on this evidence, Ms. Castillo claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Ms. Castillo pretrial.

71.    **Refusal of Pre-Trial Release For Carlos Fuente Páramo.** After he was arrested, an immigration hold was placed on Mr. Fuente Páramo, as shown below:

| | |
|---|---|
| Hold   Agency ID: | |
| Bond Amount | 0.00 |
| Charge | ILLEGAL ALIEN |
| Warrant Number | DAL1511000 |
| Magistrate | |
| Remark | H/F IMMIGRATION |

The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Fuente Páramo, requesting that Dallas County detain Mr. Fuente Páramo after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Fuente Páramo in November 2014, showing that Mr. Fuente Páramo was eligible for pretrial release. Mr. Fuente Páramo did not attempt to pay bond because he believed it was futile to do so. It was well

known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Mr. Fuente Páramo knew that he had an immigration hold. But for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration hold, Mr. Fuente Páramo could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Fuente Páramo to pay bail on his original purported criminal offense, Dallas County should have released Mr. Fuente Páramo, as Dallas County had no other basis to believe that Mr. Fuente Páramo had committed or was committing a criminal offense. Thus, to further detain Mr. Fuente Páramo, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Fuente Páramo. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence. Mr. Fuente Páramo knew of no hold that might justify further detention besides the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Fuente Páramo due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Fuente Páramo. Mr. Fuente Páramo does not have a copy of the detainer that ICE sent Dallas County. Mr. Fuente Páramo nevertheless claims, as a fact, that the detainer does not indicate that Mr. Fuente Páramo had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Fuente Páramo had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Fuente Páramo was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful

65

employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Fuente Páramo's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Fuente Páramo had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Fuente Páramo claims as fact that there is nothing in the IDENT database that would indicate that Mr. Fuente Páramo had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Fuente Páramo had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Fuente Páramo had committed or was committing a crime. Based on this evidence, Mr. Fuente Páramo claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Fuente Páramo pretrial.

72.    **Refusal of Pre-Trial Release for Abel Hernandez.** After he was arrested, an immigration hold was placed on Mr. Hernandez, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Hernandez, requesting that Dallas County detain Mr. Hernandez after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Hernandez in October 2015, showing that Mr. Hernandez was eligible for pretrial release. Mr. Hernandez did not attempt to pay bond because he believed it was futile to do so. It was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Mr. Hernandez knew that he had an immigration hold. But for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration hold, Mr. Hernandez could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Hernandez to pay bail on his original purported criminal offense, Dallas County should have released Mr. Hernandez, as Dallas County had no other basis to believe that Mr. Hernandez had committed or was committing a criminal offense. Thus, to further detain Mr. Hernandez, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Hernandez. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence. The only hold listed in Mr. Hernandez's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Hernandez due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Hernandez. Mr. Hernandez does not have a copy of the detainer that ICE sent Dallas County. Mr. Hernandez nevertheless claims, as a fact, that the detainer does not indicate that Mr. Hernandez had committed or was committing a crime. The form used by ICE generally

indicates civil immigration violations, not criminal violations. Further, Mr. Hernandez had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Hernandez was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Hernandez's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Hernandez had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Hernandez claims as fact that there is nothing in the IDENT database that would indicate that Mr. Hernandez had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Hernandez had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Hernandez had committed or was committing a crime. Based on this evidence, Mr. Hernandez claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Hernandez pretrial.

73.    **Refusal of Pre-Trial Release for Salvador Jauregui.** After he was arrested, an immigration hold was placed on Mr. Jauregui, as shown below:

| Hold | Agency ID |
|---|---|
| Bond Amount | 0.00 |
| Charge | ILLEGAL ALIEN |
| Warrant Number | 353974343 |
| Magistrate | |
| Remark | H/F INS |

The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Jauregui, requesting that Dallas County detain Mr. Jauregui after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Jauregui in October 2015, showing that Mr. Jauregui was eligible for pretrial release. Mr. Jauregui did not attempt to pay bond because he believed it was futile to do so. It was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Mr. Jauregui knew that he had an immigration hold. But for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration hold, Mr. Jauregui could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Jauregui to pay bail on his original purported criminal offense, Dallas County should have released Mr. Jauregui, as Dallas County had no other basis to believe that Mr. Jauregui had committed or was committing a criminal offense. Thus, to further detain Mr. Jauregui, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Jauregui. The fact that

Dallas County did not have probable cause of a different criminal offense is supported by evidence. The only hold listed in Mr. Jauregui's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Jauregui due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Jauregui. Mr. Jauregui does not have a copy of the detainer that ICE sent Dallas County. Mr. Jauregui nevertheless claims, as a fact, that the detainer does not indicate that Mr. Jauregui had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Jauregui had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Jauregui was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Jauregui's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Jauregui had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Jauregui claims as fact that there is nothing in the IDENT database that would indicate that Mr. Jauregui had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Jauregui had committed or was committing a crime, the detainer provided

70

by ICE to Dallas County did not show that Mr. Jauregui had committed or was committing a crime. Based on this evidence, Mr. Jauregui claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Jauregui pretrial.

74.  **Refusal of Pre-Trial Release for Julio Loera.** After he was arrested, an immigration hold was placed on Mr. Loera, as shown below:

|  |  |
|---|---|
| Hold  Agency ID: |  |
| Bond Amount  0.00 |  |
| Charge  ILLEGAL ALIEN |  |
| Warrant Number  1501001118 |  |
| Magistrate |  |
| Remark  H/F INS NO BOND |  |

The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Loera, requesting that Dallas County detain Mr. Loera after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Loera in March 2015, showing that Mr. Loera was eligible for pretrial release. Mr. Loera did not attempt to pay bond because he believed it was futile to do so. It was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Mr. Loera knew that he had an immigration hold. But for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration hold, Mr. Loera could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Loera to pay bail on his original purported criminal offense, Dallas County should have

71

released Mr. Loera, as Dallas County had no other basis to believe that Mr. Loera had committed or was committing a criminal offense. Thus, to further detain Mr. Loera, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Loera. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence. The only hold listed in Mr. Loera's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Loera due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Loera. Mr. Loera does not have a copy of the detainer that ICE sent Dallas County. Mr. Loera nevertheless claims, as a fact, that the detainer does not indicate that Mr. Loera had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Loera had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Loera was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Loera's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Loera had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an

72

immigration crime, Mr. Loera claims as fact that there is nothing in the IDENT database that would indicate that Mr. Loera had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Loera had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Loera had committed or was committing a crime. Based on this evidence, Mr. Loera claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Loera pretrial.

75.   **Refusal of Pre-Trial Release for Arturo Muñoz Martinez.** After he was arrested, an immigration hold was placed on Mr. Muñoz Martinez, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Muñoz Martinez, requesting that Dallas County detain Mr. Muñoz Martinez after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Muñoz Martinez in December 2014, showing that Mr. Muñoz Martinez was eligible for pretrial release. Mr. Muñoz Martinez did not attempt to pay bond because he believed it was futile to do so. It was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Mr. Muñoz Martinez knew that he had an immigration hold. But for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration

hold, Mr. Muñoz Martinez could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Muñoz Martinez to pay bail on his original purported criminal offense, Dallas County should have released Mr. Muñoz Martinez, as Dallas County had no other basis to believe that Mr. Muñoz Martinez had committed or was committing a criminal offense. Thus, to further detain Mr. Muñoz Martinez, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Muñoz Martinez. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence. The only hold listed in Mr. Muñoz Martinez's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Muñoz Martinez due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Muñoz Martinez. Mr. Muñoz Martinez does not have a copy of the detainer that ICE sent Dallas County. Mr. Muñoz Martinez nevertheless claims, as a fact, that the detainer does not indicate that Mr. Muñoz Martinez had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Muñoz Martinez had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Muñoz Martinez was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. §

74

1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Muñoz Martinez's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Muñoz Martinez had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Muñoz Martinez claims as fact that there is nothing in the IDENT database that would indicate that Mr. Muñoz Martinez had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Muñoz Martinez had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Muñoz Martinez had committed or was committing a crime. Based on this evidence, Mr. Muñoz Martinez claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Muñoz Martinez pretrial.

76.    **Refusal of Pre-Trial Release for Alberto Sanchez Chavez.** After he was arrested, an immigration hold was placed on Mr. Sanchez Chavez, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Sanchez Chavez, requesting that Dallas County detain Mr. Sanchez Chavez after he otherwise

would be released for transfer to ICE. Bail was nominally set for Mr. Sanchez Chavez in November 2015, showing that Mr. Sanchez Chavez was eligible for pretrial release. Mr. Sanchez Chavez did not attempt to pay bond because he believed it was futile to do so. It was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Mr. Sanchez Chavez knew that he had an immigration hold. But for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration hold, Mr. Sanchez Chavez could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Sanchez Chavez to pay bail on his original purported criminal offense, Dallas County should have released Mr. Sanchez Chavez, as Dallas County had no other basis to believe that Mr. Sanchez Chavez had committed or was committing a criminal offense. Thus, to further detain Mr. Sanchez Chavez, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Sanchez Chavez. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence. The only hold listed in Mr. Sanchez Chavez's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Sanchez Chavez due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Sanchez Chavez. Mr. Sanchez Chavez does not have a copy of the detainer that ICE sent Dallas County. Mr. Sanchez Chavez nevertheless claims, as a fact, that the detainer does not indicate that Mr. Sanchez Chavez had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Sanchez

Chavez had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Sanchez Chavez was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Sanchez Chavez's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Sanchez Chavez had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Sanchez Chavez claims as fact that there is nothing in the IDENT database that would indicate that Mr. Sanchez Chavez had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Sanchez Chavez had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Sanchez Chavez had committed or was committing a crime. Based on this evidence, Mr. Sanchez Chavez claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Sanchez Chavez pretrial.

77.    **Refusal of Pretrial Release for Abraham Santana.** After he was arrested, an immigration hold was placed on Mr. Santana, as shown below:

77

| | |
|---|---|
| Hold | Agency ID |
| Bond Amount | 0.00 |
| Charge | ILLEGAL ALIEN |
| Warrant Number | 354196305 |
| Magistrate | |
| Remark | H/F IMMIGRATION/NO BOND |

The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Santana, requesting that Dallas County detain Mr. Santana after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Santana in November 2015, showing that Mr. Santana was eligible for pretrial release. Mr. Santana did not attempt to pay bond because he believed it was futile to do so. It was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Mr. Santana knew that he had an immigration hold. But for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration hold, Mr. Santana could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Santana to pay bail on his original purported criminal offense, Dallas County should have released Mr. Santana, as Dallas County had no other basis to believe that Mr. Santana had committed or was committing a criminal offense. Thus, to further detain Mr. Santana, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Santana. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence.

Mr. Santana knew of no hold that might justify further detention besides the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Santana due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Santana. Mr. Santana does not have a copy of the detainer that ICE sent Dallas County. Mr. Santana nevertheless claims, as a fact, that the detainer does not indicate that Mr. Santana had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Santana had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Santana was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Santana's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Santana had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Santana claims as fact that there is nothing in the IDENT database that would indicate that Mr. Santana had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Santana had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Santana had

committed or was committing a crime. Based on this evidence, Mr. Santana claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Santana pretrial.

78.   **Refusal of Pretrial Release for Jesus Lopez.** After he was arrested, an immigration hold was placed on Mr. Lopez, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Lopez, requesting that Dallas County detain Mr. Lopez after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Lopez in October 2015, showing that Mr. Lopez was eligible for pretrial release. Mr. Lopez did not attempt to pay bond because he believed it was futile to do so. It was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Mr. Lopez knew that he had an immigration hold. But for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration hold, Mr. Lopez could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Lopez to pay bail on his original purported criminal offense, Dallas County should have released Mr. Lopez, as Dallas County had no other basis to believe that Mr. Lopez had committed or was committing a criminal offense. Thus, to further detain Mr. Lopez, Dallas County

must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Lopez. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence. The only hold listed in Mr. Lopez's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Lopez due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Lopez. Mr. Lopez does not have a copy of the detainer that ICE sent Dallas County. Mr. Lopez nevertheless claims, as a fact, that the detainer does not indicate that Mr. Lopez had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Lopez had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Lopez was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneur-ship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Lopez's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Lopez had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Lopez claims as fact that there is nothing in the IDENT database that would indicate that Mr. Lopez had committed or was committing a crime. Because nothing in

the IDENT database indicated that Mr. Lopez had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Lopez had committed or was committing a crime. Based on this evidence, Mr. Lopez claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Lopez pretrial.

79.   **Refusal of Pretrial Release for Gonzalo Ramirez Vasquez.** After he was arrested, an immigration hold was placed on Mr. Ramirez Vasquez, as shown below:

|  |  |
| --- | --- |
| Hold   Agency ID: | |
| Bond Amount | 0.00 |
| Charge | ILLEGAL ALIEN |
| Warrant Number | 1505000183 |
| Magistrate | |
| Remark | H/F INS/////NO BOND |

The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Ramirez Vasquez, requesting that Dallas County detain Mr. Ramirez Vasquez after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Ramirez Vasquez in January 2015, showing that Mr. Ramirez Vasquez was eligible for pretrial release. Mr. Ramirez Vasquez did not attempt to pay bond because he believed it was futile to do so. It was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Mr. Ramirez Vasquez knew that he had an immigration hold. But for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration hold, Mr. Ramirez Vasquez could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Ramirez

Vasquez to pay bail on his original purported criminal offense, Dallas County should have released Mr. Ramirez Vasquez, as Dallas County had no other basis to believe that Mr. Ramirez Vasquez had committed or was committing a criminal offense. Thus, to further detain Mr. Ramirez Vasquez, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Ramirez Vasquez. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence. The only hold listed in Mr. Ramirez Vasquez's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Ramirez Vasquez due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Ramirez Vasquez. Mr. Ramirez Vasquez does not have a copy of the detainer that ICE sent Dallas County. Mr. Ramirez Vasquez nevertheless claims, as a fact, that the detainer does not indicate that Mr. Ramirez Vasquez had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Ramirez Vasquez had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Ramirez Vasquez was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Ramirez Vasquez's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause

of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Ramirez Vasquez had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Ramirez Vasquez claims as fact that there is nothing in the IDENT database that would indicate that Mr. Ramirez Vasquez had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Ramirez Vasquez had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Ramirez Vasquez had committed or was committing a crime. Based on this evidence, Mr. Ramirez Vasquez claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Ramirez Vasquez pretrial.

80.    **Refusal of Pre-Trial Release for Carlos Reyna Esparragoza.** After he was arrested, an immigration hold was placed on Mr. Reyna Esparragoza, as shown below:

| | |
|---|---|
| Hold Agency ID: | |
| Bond Amount | 0.00 |
| Charge | ILLEGAL ALIEN |
| Warrant Number | 353180757 |
| Magistrate | |
| Remark | H/F IMMIGRATION NO BOND ALLOWED |

The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Reyna Esparragoza, requesting that Dallas County detain Mr. Reyna Esparragoza after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Reyna Esparragoza in June 27, 2015, for $1,500, showing that Mr. Reyna Esparragoza was eligible for pretrial release.

| Offense(s): | Cause No. | Agency Name | Bond Amount | |
|---|---|---|---|---|
| POSS CS PG 1 >=1G<4G | F1555669 | Dallas Police | $1,500.00 | Cash/Sur |

Remanded to custody of _____ DSO _____    in witness whereof, I have subscribed my name

this the 27 day of _____ June _____ , 2015 .

_____

Magistrate        Dallas County, Texas

The same day, Mr. Reyna Esparragoza tendered a bail bond in the amount of $1,500 to secure

pretrial release, as shown below:

**A-EZ OUT BAIL BONDS**   JAIL LOCATION: **LS**

## BAIL BOND

## THE STATE OF TEXAS, COUNTY OF DALLAS

VS

Carlos _____ Reynaesparragcza
First | Middle | Last

Race **W** | Sex **m** | DOB ▮

MISDEMEANOR _____ | FELONY ✓

JUDGE: **Lusk** | BOOKIN NO ▮
DATE: **06/87/2015** | CASE/WARRANT # **F1555loug**

KNOWN ALL MEN BY THESE PRESENTS: THAT WE, _____ AS PRINCIPAL, AND THE UNDERSIGNED *AMERICAN SURETY CO. agent: Eddie Salazar dba A-EZ Out Bail Bonds,* AS SURETY, ARE HELD FIRMLY BOUND UNTO THE STATE OF TEXAS IN THE PENAL SUM OF **Fifteen hundred** DOLLARS($ **1500** ) AND IN ADDITION THERE TO, WE ARE BOUND FOR THE PAYMENT OF ALL FEES AND EXPENSES THAT MAY BE INCURRED BY ANY PEACE OFFICER IN RE-ARRESTING THE SAID PRINCIPAL IN THE EVENT OF THE STATED CONDITIONS OF THIS BOND ARE VIOLATED FOR THE PAYMENT OF WHICH SUM OR SUMS WILL AND TRULY TO BE MADE, WE DO BIND OURSELVES, AND EACH OF US, OUR HEIRS, EXECUTORS AND ADMINISTRATORS, JOINTLY AND SEVERALLY. THE CONDITION OF THIS BOND IS THAT THE DEFENDANT HAS BEEN CHARGED WITH **Poss CS Pg 17:16 ∠ 46** AND TO SECURE HIS/HER RELEASE FROM CUSTODY IS ENTERING INTO THIS OBLIGATION BINDING HIM/HER TO MAKE A PERSONAL APPEARANCE (INSTANTER) BEFORE COURT TO WHICH THE SAME MAY BE TRANSFERRED AND BASED ON SAID CHARGE. HABEAS CORPUS WITH WRIT-THAT IS SAID PRINCIPAL SHALL WELL AND TRULY APPEAR IN THE **_Instanter_** COURT OF _____ TEXAS, AT _____ AM, ON THE _____ DAY OF _____, A.D. 20_____ IN THE COURT ROOM OF SAID COURT, IN THE CITY OF **_DALLAS_**, COUNTY OF **_DALLAS_**, TEXAS, PURSUANT TO THE ORDER OF THE JUDGE THIS DAY MADE, GRANTING A WRIT OF HABEAS CORPUS ON APPLICATION OF SAID PRINCIPAL, IT HAVING BEEN CALLED TO HIS ATTENTION THAT SAID PRINCIPAL IS RESTRAINED OF HIS LEBERTY BY A PEACE OFFICER OF DALLAS COUNTY, TEXAS UNDER ACCUSATION OF SAID CHARGE AGAINST THE LAWS OF THE STATE OF TEXAS, SAID WRIT BEING DEPART THERE FROM WITHOUT LEAVE OF SAID COURT, PENDING EXAMINATION OF AND HEARING OF SAID WRIT, IN ORDER TO ABIDE FINAL DETERMINATION THEREOF BY SAID COURT.

I, *AMERICAN SURETY CO. agent: Eddie Salazar dba A-EZ Out Bail Bonds,* DO SWEAR THAT I AM WORTH AT LEAST THE SUM OF $ **3000** DOLLARS, AFTER DEDUCTING FROM MY PROPERTY ALL THAT WHICH IS EXEMPT BY THE CONSTITUTION AND OF THE STATE FROM FORCED SALE AND AFTER PAYMENT OF ALL BY DEBTS, WHETHER INDIVIDUAL OR SECURITY DEBTS AND AFTER SATISFYING ALL ENCUMBERANCES UPON MY PROPERTY WHICH ARE KNOWN TO ME AND THAT I RESIDE IN **_DALLAS_** COUNTY AND HAVE PROPERTY IN THIS STATE LIABLE TO FURTHER SWEAR THAT THERE ARE NO OUTSTANDING JUDGEMENTS IN DALLAS COUNTY, TEXAS OR ELSEWHERE AGAINST THE AFFIANT AND THAT THE AFFIANT MAKES THIS STATEMENT FOR THE EXPRESS PURPOSE OF INDUCING THE APPROVAL AND ACCEPTANCE OF SAID BOND WITH HIMSELF AS A SURETY THEREON, WELL KNOWING; BELIEVING AND INTENDING THAT THE MAKING OF THIS STATEMENT WILL INDUCE THE OFFICIAL CHARGED WITH THE DUTY OF ACCEPTING AND APPROVING SAID BOND TO ACCEPT AND APPROVE THE SAME AND THAT ALL STATEMENTS HEREIN ARE TRUE, SO HELP ME GOD.

X _____
PRINCIPAL
ADDRESS: **1418 Buckner Blvd**
CITY: **Dallas** STATE **TX** ZIP **75217**
PHONE: **214 687 2360**

X _____ **#862**
WITNESS/JAILER          DEPT/AGENCY

TAKEN AND APPROVED BY ME THIS **27th** DAY OF **June** 2015
LUPE VALDEZ, SHERIFF, DALLAS CO, TEXAS

BY: _____ DEPUTY

American Surety Co. Agent EDDIE SALAZAR, d/b/a A-EZ OUT BAIL BONDS
**400 E. IRVING BLVD**
**IRVING, TEXAS 75060**
**972-785-1000**
SWORN TO AND SUBSCRIBED BEFORE ME ON
THIS **27th** DAY OF **June** 2015

NOTARY PUBLIC FOR DALLAS COUNTY   MY COMMISSION EXPIRES **3.9.19**

BOND ACCT# **1127** BOND ID # **12956**

MIGUEL HERNANDEZ
Notary Public, State of Texas
My Commission Expires
March 09, 2019

86



Dallas County did not release Mr. Reyna Esparragoza pre-trial, even though he tendered bail.

One of the docket sheets for Mr. Reyna Esparragoza shows the indicator "BOND" crossed out,

and replaced with "Jail."



Instead of releasing Mr. Reyna Esparragoza after he paid bail, on August 5, 2015 (around six

weeks later), Sr. Sgt. Ric Bruner (or another Dallas County employee) caused a Dallas County

district attorney to seek to hold the bond insufficient because of the detainer lodged against

Mr. Reyna Esparragoza:



SCANNED

CAUSE NUMBER: F-1555669

STATE OF TEXAS       §       IN THE 265th JUDICIAL DISTRICT

VS.       §       COURT

REYNAESPARRAGOZA, CARLOS       DALLAS COUNTY, TEXAS

### NOTICE OF FLIGHT RISK

COMES NOW THE STATE OF TEXAS, by and through its Dallas County Assistant District Attorney, Janie Kunnathusseril, and hereby provides Notice to the Court that the above named defendant is a flight risk. The Immigration and Customs Enforcement Division (ICE) of the Department of Homeland Security has placed a detainer on the defendant who will be transferred to ICE custody prior to the defendant answering to the charge now pending against him/her.

The defendant is currently incarcerated in the Dallas County Jail for the offense of POSS CS IG, and has a $1,500 Surety Bond. In order to ensure the defendant's presence for this case, the State requests this Honorable Court to exercise its authority pursuant to Code of Criminal Procedure, Article 17.09, Section 3 and hold the bond insufficient and set a bond hearing, if the court believes such is warranted.

Respectfully submitted,

Assistant District Attorney
Dallas County, Texas
Texas Bar Card Number: 24083336

The Court granted Dallas County's request, and continued to hold Mr. Reyna Esparragoza pretrial. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Reyna Esparragoza to pay bail on his original purported criminal offense, Dallas County should have released Mr. Reyna Esparragoza, as Dallas County had no other basis to believe that Mr. Reyna Esparragoza had committed or was committing a criminal offense. Thus, to further detain Mr. Reyna Esparragoza, Dallas County must show probable cause of a different criminal offense.

Dallas County did not have such probable cause, but continued to detain Mr. Reyna Esparragoza. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence. The only hold listed in Mr. Reyna Esparragoza's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Reyna Esparragoza due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Reyna Esparragoza. Mr. Reyna Esparragoza does not have a copy of the detainer that ICE sent Dallas County. Mr. Reyna Esparragoza nevertheless claims, as a fact, that the detainer does not indicate that Mr. Reyna Esparragoza had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Reyna Esparragoza had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Reyna Esparragoza was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Reyna Esparragoza's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Reyna Esparragoza had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Reyna Esparragoza claims as fact that there is nothing in the IDENT

database that would indicate that Mr. Reyna Esparragoza had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Reyna Esparragoza had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Reyna Esparragoza had committed or was committing a crime. Based on this evidence, Mr. Reyna Esparragoza claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Reyna Esparragoza pretrial.

81. **Refusal of Pretrial Release for Jose Rodriguez.** After he was arrested, an immigration hold was placed on Mr. Rodriguez, as shown below:



The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Rodriguez, requesting that Dallas County detain Mr. Rodriguez after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Rodriguez in December 2015, showing that Mr. Rodriguez was eligible for pretrial release. Mr. Rodriguez did not attempt to pay bond because he believed it was futile to do so. It was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Mr. Rodriguez knew that he had an immigration hold. But for Dallas County's practices of refusing immediate release on bond for any detainee with an immigration hold, Mr. Rodriguez could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial

detention. If Dallas County had allowed Mr. Rodriguez to pay bail on his original purported criminal offense, Dallas County should have released Mr. Rodriguez, as Dallas County had no other basis to believe that Mr. Rodriguez had committed or was committing a criminal offense. Thus, to further detain Mr. Rodriguez, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Rodriguez. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence. The only hold listed in Mr. Rodriguez's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Rodriguez due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Rodriguez. Mr. Rodriguez does not have a copy of the detainer that ICE sent Dallas County. Mr. Rodriguez nevertheless claims, as a fact, that the detainer does not indicate that Mr. Rodriguez had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Rodriguez had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Rodriguez was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or assisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose (8 U.S.C. § 1328). Mr. Rodriguez's claimed innocence of these crimes is evidence of the fact that the detainer used by ICE did not show probable cause of a criminal violation. Further, the detainer

91

is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because Mr. Rodriguez had not been charged with an immigration crime, convicted of an immigration crime, or guilty of an immigration crime, Mr. Rodriguez claims as fact that there is nothing in the IDENT database that would indicate that Mr. Rodriguez had committed or was committing a crime. Because nothing in the IDENT database indicated that Mr. Rodriguez had committed or was committing a crime, the detainer provided by ICE to Dallas County did not show that Mr. Rodriguez had committed or was committing a crime. Based on this evidence, Mr. Rodriguez claims as fact that Dallas County did not have probable cause of a different criminal offense, and should not have held Mr. Rodriguez pretrial.

82.    **Refusal of Pretrial Release for Epifanio Uribe Ortiz.** After he was arrested, an immigration hold was placed on Mr. Uribe Ortiz, as shown below:

| | |
|---|---|
| Hold | Agency ID |
| Bond Amount | 0.00 |
| Charge | ILLEGAL ALIEN |
| Warrant Number | 1508000201 |
| Magistrate | |
| Remark | H/F IMMIGRATION |

The immigration hold is evidence of the fact that ICE sent a detainer to Dallas County for Mr. Uribe Ortiz, requesting that Dallas County detain Mr. Uribe Ortiz after he otherwise would be released for transfer to ICE. Bail was nominally set for Mr. Uribe Ortiz in August 2015, showing that Mr. Uribe Ortiz was eligible for pretrial release. Mr. Uribe Ortiz did not attempt to pay bond because he believed it was futile to do so. It was well known that Dallas County refused immediate release on bond for any detainee with an immigration hold, and Mr. Uribe Ortiz knew that he had an immigration hold. But for Dallas County's practices of refusing immediate

92

release on bond for any detainee with an immigration hold, Mr. Uribe Ortiz could have and would have secured a bond to ensure pretrial release. Dallas County's practice of refusing immediate release on bond to individuals with immigration holds resulted in pretrial detention. If Dallas County had allowed Mr. Uribe Ortiz to pay bail on his original purported criminal offense, Dallas County should have released Mr. Uribe Ortiz, as Dallas County had no other basis to believe that Mr. Uribe Ortiz had committed or was committing a criminal offense. Thus, to further detain Mr. Uribe Ortiz, Dallas County must show probable cause of a different criminal offense. Dallas County did not have such probable cause, but continued to detain Mr. Uribe Ortiz. The fact that Dallas County did not have probable cause of a different criminal offense is supported by evidence. The only hold listed in Mr. Uribe Ortiz's file is the immigration hold. This is evidence of the fact that (i) Dallas County did not have probable cause of a criminal offense from another county or state, and (ii) Dallas County held Mr. Uribe Ortiz due to that immigration hold, and ultimately because of ICE's request for Dallas County to detain Mr. Uribe Ortiz. Mr. Uribe Ortiz does not have a copy of the detainer that ICE sent Dallas County. Mr. Uribe Ortiz nevertheless claims, as a fact, that the detainer does not indicate that Mr. Uribe Ortiz had committed or was committing a crime. The form used by ICE generally indicates civil immigration violations, not criminal violations. Further, Mr. Uribe Ortiz had not been charged or convicted of an immigration crime, and was not guilty of an immigration crime. In particular, Mr. Uribe Ortiz was innocent of any of the following immigration crimes: bringing in and harboring aliens (8 U.S.C. § 1324); unlawful employment of aliens (8 U.S.C. § 1324a); willful failure to disclose role as document preparer (8 U.S.C. § 1324c(e)(1)); improper entry (8 U.S.C. § 1325(a)); marriage fraud (8 U.S.C. § 1325(c)); immigration-related

entrepreneurship fraud (8 U.S.C. § 1325(d)); illegal reentry (8 U.S.C. § 1326); aiding or as-

sisting certain aliens to enter (8 U.S.C. § 1327); and importation of alien for immoral purpose

(8 U.S.C. § 1328). Mr. Uribe Ortiz's claimed innocence of these crimes is evidence of the fact

that the detainer used by ICE did not show probable cause of a criminal violation. Further, the

detainer is based on information contained in the IDENT database, *see supra* ¶¶ 8-9. Because

Mr. Uribe Ortiz had not been charged with an immigration crime, convicted of an immigration

crime, or guilty of an immigration crime, Mr. Uribe Ortiz claims as fact that there is nothing

in the IDENT database that would indicate that Mr. Uribe Ortiz had committed or was com-

mitting a crime. Because nothing in the IDENT database indicated that Mr. Uribe Ortiz had

committed or was committing a crime, the detainer provided by ICE to Dallas County did not

show that Mr. Uribe Ortiz had committed or was committing a crime. Based on this evidence,

Mr. Uribe Ortiz claims as fact that Dallas County did not have probable cause of a different

criminal offense, and should not have held Mr. Uribe Ortiz pretrial.

### COUNT 1: 42 U.S.C. § 1983—DENIAL OF PRETRIAL RELEASE
### (ALL PLAINTIFFS)

83.    Plaintiffs incorporate the allegations of all previous paragraphs.

84.    The Fourth Amendment prevents arrests and seizures, absent probable cause.

85.    Dallas County must allow an opportunity for pretrial release that satisfies the

Fourth Amendment.

86.    Plaintiffs' rights under the Fourth Amendment are clearly established.

87.    The Due Process Clause of the Fourteenth Amendments protect every person

against government interference with certain fundamental rights and liberty interests, unless

the interference is narrowly tailored to serve a compelling state interest.

88.    Freedom from pretrial detention is a fundamental and clearly established right.

89.    Dallas County imposed pretrial detention on Plaintiffs, infringing the Plaintiffs' strong interest in liberty. This intentional or reckless pretrial detention is not narrowly tailored to serve a compelling state interest. [6]

90.    Based on the facts and allegations at ¶¶ 7-18, 22-50, and 64-67, which are incorporated by reference, Plaintiffs claim that Dallas County did not allow an opportunity for pretrial release for those with immigration holds, even when a court nominally set bail. In particular, if any detainee with an immigration hold (such as plaintiffs) paid bail, Dallas County would either (i) continue to hold the detainee for transfer to ICE, or (ii) Sr. Sgt. Bruner's office would ask an assistant district attorney to petition a court to find the bail insufficient. Based on this evidence, Plaintiffs claim that Dallas County did not allow immediate release on bond to Plaintiffs. Further, each Plaintiff either (i) attempted to pay bail, and was not released, or (ii) believed paying bail to be a futile exercise, based on the widespread knowledge of Dallas County's refusal to allow immediate release on bond for detainees with immigration holds.

91.    Plaintiffs make more particularized allegations at ¶¶ 68-82, which are incorporated by reference. Based on those allegations and evidence, as well as those found at ¶¶ 7-18, 22-50, and 64-67, Plaintiffs claim that Dallas County did not allow immediate release on bond to Plaintiffs. Further, Plaintiffs either (i) attempted to pay bail, and were not released,

---

[6] Plaintiffs plead the pretrial-release claims under both the Fourth Amendment and the Due Process Clause. Plaintiffs do not expect that the due-process claims will survive a motion to dismiss if the Court were to apply the reasoning in its opinions in the *Mercado* matter, but Plaintiffs seek to protect the appellate record by urging the Due Process claim along with the Fourth Amendment claim.

or (ii) believed paying bail to be a futile exercise, based on the widespread knowledge of Dallas County's refusal to allow immediate release on bond for detainees with immigration holds.

92.     If Dallas County had allowed bail, Dallas County would have needed to release Plaintiffs if Plaintiffs had paid bail, as Dallas County had no other probable cause to believe that any Plaintiff had committed or was committing criminal activity, for the reasons stated at ¶¶ 68-82, which are incorporated by reference. Further, Plaintiffs either (i) attempted to pay bail, and were not released, or (ii) believed paying bail to be a futile exercise, based on the widespread knowledge of Dallas County's refusal to allow immediate release on bond for detainees with immigration holds.

93.     The moving force for this claim is Dallas County's practice of refusing immediate release on bond for detainees with immigration holds. In particular, if any detainee with an immigration hold (such as plaintiffs) paid bail, Dallas County would either (i) continue to hold the detainee for transfer to ICE, or (ii) Sr. Sgt. Bruner's office would ask an assistant district attorney to petition a court to find the bail insufficient. Holding plaintiffs without an adequate opportunity for bail violates Texas statutes, the Texas Constitution, and/or the United States Constitution. Dallas County and Sheriff Valdez are responsible for these policies and practices. In particular, Sheriff Valdez oversees and is responsible for Dallas County's decisions on (i) whether to refuse bond posted for those with immigration holds, and (ii) whether to detain individuals with immigration holds that are otherwise cleared for release.

94.     As a result of Dallas County's actions, Plaintiffs suffered damages in an amount to be proven at trial.

COUNT 2: 42 U.S.C. § 1983—OVERDETENTION
(ALL PLAINTIFFS EXCEPT JESUS LOPEZ, GONZALO RAMIREZ VASQUEZ, CARLOS REYNA ESPARRAGOZA, JOSE RODRIGUEZ, AND EPIFANIO URIBE ORTIZ)

95.     Plaintiffs incorporate the allegations of all previous paragraphs.

96.     The Fourth Amendment prevents arrests and seizures, absent probable cause.

97.     When an individual is found not guilty, has all charges dropped against him or her, serves his or her sentence, or pleads guilty and receives no additional jail time, Dallas County must release that individual, absent a separate showing of probable cause that satisfies the Fourth Amendment.

98.     Plaintiffs' rights under the Fourth Amendment are clearly established.

99.     Dallas County has a policy and practice of detaining individuals with immigration holds who have otherwise been cleared for release, without requiring probable cause to believe that a different criminal offense has been or is being committed or other authority that would satisfy the Fourth Amendment. Instead, Dallas County justifies its detentions with ICE-issued requests to detain that neither satisfy the Fourth Amendment nor show probable cause to believe that a different criminal offense has been or is being committed.

100.    As shown at ¶¶ 7-18, 22-34, and 51-53, which are incorporated by reference, Dallas County detained Plaintiffs after (i) Dallas County dropped all pending criminal charges, (ii) the detainee was found innocent of all pending criminal charges, (iii) the detainee pleaded guilty, but received no additional jail time, or (iv) the detainee pleaded guilty and served his sentence in Dallas County Jail, without probable cause that satisfies the Fourth Amendment. Further, Dallas County detained certain Plaintiffs for more than 48 hours.

101.    Plaintiffs make Plaintiff-specific allegations at ¶¶ 54-63, which are incorporated by reference. As explained therein, along with the allegations and facts at ¶¶ 7-18, 22-34, and

51-53 (which are incorporated by reference), Plaintiffs were detained after (i) Dallas County dropped all pending criminal charges, (ii) the detainee was found innocent of all pending criminal charges, (iii) the detainee pleaded guilty, but received no additional jail time, or (iv) the detainee pleaded guilty and served his sentence in Dallas County Jail. But, as explained at at least ¶¶ 54-63, Dallas County did not know of any facts that showed that each Plaintiff had committed or was committing a new criminal violation sufficient to show probable cause under the Fourth Amendment. As a result, each Plaintiff should have been released after (i) Dallas County dropped all pending criminal charges, (ii) the detainee was found innocent of all pending criminal charges, (iii) the detainee pleaded guilty, but received no additional jail time, or (iv) the detainee pleaded guilty and served his sentence in Dallas County Jail.

102.   The moving force for this claim is Dallas County's policy of honoring ICE requests to detain and detaining individuals subject to an immigration hold, even if Dallas County has no probable cause of a new criminal violation, and (i) Dallas County dropped all pending criminal charges, (ii) the detainee was found innocent of all pending criminal charges, (iii) the detainee pleaded guilty, but received no additional jail time, or (iv) the detainee pleaded guilty and served his sentence in Dallas County Jail. Dallas County and Sheriff Valdez are responsible for this policy. In particular, Sheriff Valdez oversees and is responsible for Dallas County's decision on whether to detain individuals with immigration holds that are otherwise cleared for release.

103.   As a result of Dallas County's actions, Plaintiffs suffered damages in an amount to be proven at trial.

### JURY DEMAND

104.   Plaintiffs demand a jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiffs request the following relief:

i.    That the Court award Plaintiffs actual and compensatory damages in an amount to be proven at trial;

ii.   That the Court award pre-judgment interest at the maximum rate allowed by law and post-judgment interest pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

iii.  That Dallas County pay Plaintiffs' reasonable attorney fees and costs as permitted by law, including as permitted by 42 U.S.C. § 1988; and

iv.   That the Court award such other and further relief as the Court deems just and proper.

Dated: January 23, 2017

Respectfully submitted,

_/s Anthony M. Garza_____

ANTHONY M. GARZA
  Texas State Bar No. 24050644
  agarza@ccrglaw.com
CHARHON CALLAHAN
ROBSON & GARZA, PLLC
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

ERIC PUENTE
  Texas State Bar No. 24069225
  epuente@phflaw.com
RAYMOND M. HINDIEH
  Texas State Bar No. 24078666
  rhindieh@phflaw.com
PUENTE & HINDIEH PLLC
3300 Oak Lawn Ave., Ste. 401
Dallas, Texas 75219
Telephone: (214) 730-0485
Telecopier: (214) 730-0520

*Counsel for Plaintiffs*